MAUDE PIPER, as Administratrix of Estate of Dell B. Piper, deceased, Appellant, v. JOHN TAYLOR, ET AL., Respondents.

(188 N. W. 171.)

**Deeds — real estate may be conveyed divided perpendicularly or laterally.**

1. Real estate may be conveyed divided upon perpendicular or lateral lines.

**Associations — voluntary unincorporated association may receive a lease running to its trustees.**

2. A voluntary unincorporated association may receive a lease running to its trustees.

Where the second story of a building was constructed by an unincorporated association, at its expense, upon the land and building of another, with understanding that it should possess an ownership and dominion thereover, and where such association went into possession upon completion of the second story and has since remained in possession, paid the taxes, and kept up the insurance, and where, pursuant to a misconception of the association's rights, a lease for 20 years with the privilege of renewal for an additional 20 years was made as the evidence of its right, and, thereafter, the law being amended so as to permit a 99 year lease, a 99 year lease was made dating from the original occupancy, pursuant to the agreement of the parties but was never delivered or has been lost, it is *held*, for reasons stated in the opinion, that the judgment of the trial court, directing the holder of the legal title to execute such 99 year lease was proper.

Opinion filed April 26, 1922.

Action to quiet title in District court, Dickey county, *McKenna,* J.

The plaintiff has appealed from the judgment.

Affirmed.

Per curiam.

*E. E. Cassels, T. L. Brouillard,* and *E. T. Burke,* for appellant.

*F. J. Graham, W. S. Lauder,* for respondents.

The mere fact that a lease of certain premises exists does not estop one named as lessee to question the other's title. Hebden v. Bina, 17 N. D. 235.

"Open, notorious and adverse possession of the real property is notice to the world of every right or interest owned by or held by the person or persons in possession whether such right be legal or equitable." Krause v. Krause, 30 N. D. 54-67; See also O'Toole v. Omlie, 8 N. D. 444; Hadlin v. Les, 21 N. D. 495; 48 Cent. Dig. 765.

## Statement.

PER CURIAM. The administratrix brings this action to quiet the title of the estate in two lots, and a two-story building situated thereupon, in the town of Monango, N. D. The facts necessary to be stated are as follows: In 1899, one Caldwell, then the owner of the lots, contemplated the erection of a store building. Various persons in the town were interested in erecting a town hall. Some $1,200 was raised for such purpose through the sale of shares at $10 per share to some 60-odd individuals. A voluntary unincorporated association was formed called the Monango Hall Association. Through negotiations had between Mr. Caldwell and the trustees of this association, it was agreed that the association might construct, upon the first story of the building to be erected by Mr. Caldwell, a second story for its use. Pursuant to such negotiations, bids were requested, and a contract made for the construction of a two-story building, the cost of the second story to be paid by the association. The building was accordingly so erected. The cost of the second story, about $1,300, was paid by the association. This amounted to four-ninths of the total cost of the building. The parties secured legal advice upon the manner in which the right of the association should be evidenced. Legal advice was given, to the effect that a deed of the second story alone could not be made; that a lease for more than 20 years could not be made by reason of the inhibition of the statute, then in force, prohibiting leases of town or city lots for a period longer than 20 years. Section 3310, R. C. 1899. The Hall Association desired a lease for 99 years. Caldwell agreed so to lease. The inhibitions of the statute prevented. Accordingly, a lease was executed from Caldwell and his wife to five persons, including Caldwell, as trustees of and for the Monango Hall Association, and any assignee thereof and to their successors in office, demising the second story of the building for a period of 20 years from November 4, 1899, upon a consideration of $1,308 paid. This lease further provided that the trustees should pay four-ninths of all taxes

assessed, and the leased premises should be insured for the benefit of such trustees; that such trustees should keep in repair the leased premises and the roof thereof, excepting that Caldwell should keep the eaves-troughs in repair; that upon its termination the trustees should have the right of renewal for a further period of 20 years upon the payment of $1. This lease was dated October 31, 1899. It was acknowledged March 15, 1901, and recorded a few days thereafter. The parties thereafter had negotiations for the purpose of making an effort to change the law. Their attorney drew a proposed law. Their representative from Dickey county urged its passage. The legislature, in 1903, did amend the law so as to permit the leasing of city lots for a period of 99 years. Chap. 151, Laws 1903; § 5289, C. L. 1913. Caldwell agreed that after the law was changed he would execute a lease for 99 years. Prior to the time that such act became effective as a law, Caldwell sold and conveyed the premises to one Piper, now deceased. During his lifetime, Piper was a member or director of the association. He was at some of the meetings of the association in 1902. He was elected as a director, and served his first term in 1903. The deed to Mr. Piper recited that it was subject to all the terms, covenants, and agreements of the lease of the upper story to the trustees, and that the grantee assumed and agreed to perform all acts under said lease agreed to be done and performed. The attorney who drew the lease testified that a lease for 99 years was drawn, and was signed after the law was amended. Mr. Piper, the deceased, and his wife (not his present widow) signed it, and he took their acknowledgement. Members of the Hall Association signed the same, but he does not know who they were. He had a copy of this lease; he has hunted for it, but cannot find it. The term in such lease began upon the date of the 20-year lease. None of the members or officers of the association were able to testify to the delivery, existence, or provisions of such 99-year lease.

The Hall Association went into possession of the second story of the building upon its completion. It has had possession, and has paid four-ninths of the taxes ever since. (From 1901 to 1919 the premises have been assessed in the name of Piper and the Hall Association). It has carried insurance in its own name. It has received the rents and profits in subleases made or in otherwise renting the Hall for various purposes. The trial court found, upon such facts, that the Hall Association was entitled to a lease for 99 years, dating from the original occupancy, to be made by the plaintiff as administratrix. Judgment was entered ac-

cordingly. The plaintiff has appealed.

It is the contention of the plaintiff that the lease for 20 years was enforceable and valid only for such period; that this period having expired, the defendants have no further claim upon the property.

## Decision.

Upon the facts it is evident that the association paid the consideration for the erection of the second story of the building. It took possession upon completion. It has had possession and exercised dominion ever since. It has paid the taxes and kept up the insurance in its own name. The owner of the land intended that the association should own the second story. He would have deeded the same to the association except for the advice received that such could not be legally done. This advice was erroneous. Caldwell could have granted or reserved the second story alone, as the parties desired. Real estate may be granted or leased, divided upon perpendicular or lateral lines. 8 R. C. L. 1068; 18 C. J. 161; Beulah Coal Mining Co. v. Heihn (N. D.) 180 N. W. 787; Pearson v. Matheson, 102 S. C. 377, 86 S. E. 1063; 3 Washburn, 340; Massot v Moses, 3 S. C. 168, 16 Am. Rep. 697 See, in re coal reservations, § 5518, C. L. 1913; Hahn v. Baker Lodge, 21 Or. 30, 27 Pac. 166, 13 L. R. A. 158, 28 Am. St. Rep. 723. In fact, the making of the lease recognized these principles. The only reason why a lease for 20 years was executed and delivered was because the parties thought that such was the extent of their legal right to create in the association an interest in the second story concerned. Both parties took action for the purpose of securing an amendment to the then existing law, so that a lease for 99 years to the association might be legally made. The attorney for the parties drew the proposed law. Their representative in the legislature urged its enactment. The law was amended, permitting such 99-year lease. Piper, the deceased and the successor of the legal title, as well as parties representing the association, signed a lease for 99 years, drawn by such attorney. This lease has not been produced. The evidence is not clear that it was ever delivered to any party, trustee, or officer of the association, but it was, in fact, drawn, signed, and acknowledged. It is further manifest that the association has been satisfied to receive a 99-year lease as representative of its interest in the second story.

Upon the facts so stated equity might readily recognize a trust by

operation of law. The situation is analogous to a resulting trust. Instead of purchasing real estate and paying the consideration therefor and by voluntary act directing or permitting the title thereto to be taken in the name of Caldwell, the situation here involves the creating of a real estate interest, the payment of the consideration therefor, and the involuntary transfer of the title in such real estate interest to Caldwell. But it was agreeable to the parties, to Piper, the owner of the legal title, and to the association, entitled equitably to a freehold in the second story, that the association should receive a 99-year lease, dating from its original occupancy. As representative of its interest, Piper executed such a lease; likewise, the association. Although unincorporated, it was proper for this association to receive and to possess such lease for its purposes, running to its trustees. 5 C. J. 1344. In effect the trial court has directed the administratrix to confirm this 99-year lease by executing a new 99-year lease, based upon the terms of the 20-year lease (excepting the term) and dating from the original occupancy. This would simply confirm in writing that which now exists in law. Accordingly, the judgment of the trial court should be affirmed.

It is so ordered, with costs.

BRONSON, CHRISTIANSON, ROBINSON and BIRDZELL, JJ., concur.

GRACE, C. J., concurs in the result.