LU RENE LAMM, Appellant, v. CHARLES G. STOEN et al., Appellees.

No. 44504.

MARCH 14, 1939.

C. N. Houck and A. C. Lynch, for appellant.

J. A. Nelson and Carl Nystrom, for appellees.

OLIVER, J.—Norske Selskab (the Norwegian Society) was a sixty-year-old unincorporated literary and social club at Decorah, Iowa, consisting of more than 100 members of Scandinavian blood. The society had a constitution and bylaws, elected officers, held regular meetings, kept records, charged $3 annual dues, and appears to have been a solvent and well conducted institution.

In 1925, it leased clubrooms from one Higgins by written lease executed in the name of the society by its president. The lease was for a term of 5 years, at an annual rental of $200, with privilege of 5-year extension. It contained a mortgage clause covering the property of the society kept in the premises as security for the rent and also a provision exempting the individual members from liability in case of the dissolution of the society. The premises were in a state of disrepair and the lease, as amended, authorized the society to make repairs amounting to $450 and deduct this from the rent to be paid. According to its records the sum actually expended by it was $563.

Later the society desired additional room and authorized its officers to again negotiate with Higgins. Resulting from these negotiations was the termination of the former lease and the making of the lease in controversy executed in the name of the society by its president for the term beginning August 1, 1927, and ending August 1, 1937. The lease was in customary form, reciting it was made "in consideration of the rents agreed to be paid by the second party", in the amount of $250 per year payable $125 August 1, and $125 March 1, in advance. It contained, among others, clauses giving the society the right to terminate upon 60-days notice, forbidding roller skating in the building during meetings of the society each Tuesday and Thursday evening, requiring the landlord to keep the property in repair, giving the society the right to sublease, giving a justice of the peace jurisdiction up to $300 in a suit instituted by the landlord, giving the landlord the right to terminate the lease and repossess the premises, or if necessary to institute forcible entry and detainer therefor in case of nonpayment of rent and requiring the tenant to properly care for the property and surrender possession at the termination of the lease. It was filed for record September 29, 1931.

The lease also contained the following recitations:

"Parties of the second part to have the right to extend the within contract for a period of ten years, subject to all the provisions and conditions as stated in this lease.

"No individual member of the party of the second part shall be liable for rents or repairs in connection with this lease. * * *

"The second party for the payment of rents and repairs as agreed does hereby mortgage and pledge to the first party all of the personal property of what kind soever, which he shall at any time have on said premises, whether the same be exempt by law from sale under execution or not."

The personal property of the society kept in the premises was about $800 in value.

In connection with the making of the above lease and securing the privilege of extension the society agreed to make certain repairs to the building and expended about $1,000 in so doing.

In April 1932, a controversy between the parties to the lease was settled by a supplemental agreement. This agreement was in the form of a resolution adopted by Norske Selskab, signed by its president and treasurer, and accepted and signed by Higgins. Higgins was then living at the home of appellant, and she participated in the negotiations leading up to this settlement and signed the agreement as a witness. In this amendment to the lease the society waived claim to a portion of the premises and Higgins agreed to make certain repairs, and to redecorate the hall and kitchen in 1932, and 1937. In case of his failure to so redecorate the society was privileged to do so, and to deduct the cost from the rent.

In August 1932, Higgins deeded to appellant the real estate in which the leased premises were situated, retaining a life estate therein. Higgins died May 22, 1933, and thereafter all rent accruing was paid to appellant. Before the lease terminated in 1937, the society notified appellant that it had decided to exercise its option for a 10-year extension. Appellant refused to consent to this, saying she would require many changes and wouldn't make a new lease under the same conditions as the old one. At the trial she testified that not until the extension was demanded did she learn the society was an unincorporated association, the lease was not bona fide and nobody was responsible for anything. She refused to accept rent from the society which was tendered as it fell due and which tenders were thereafter maintained. In September 1932, appellant instituted this suit in equity to quiet title to the real estate. The defendants named were four individuals as officers and members of Norske Selskab, an unincorporated society, in their representative capacity for the entire membership of said society. The defendants

answered setting up largely the matters hereinbefore recited by way of defense and estoppel, and by way of counterclaim or cross-petition prayed that deductions for redecorating the premises be permitted in accordance with the supplemental agreement. The decree of the trial court dismissed the petition for want of equity and adjudicated the lease to be valid and to give the society the right to occupy the premises thereunder until August 1, 1947, with right to redecorate and deduct the reasonable expense thereof from the rents. From this decree plaintiff has appealed.

I. Appellant contended in the trial court, and now urges that since the society was an unincorporated association and because of the clause in the lease exonerating the individual members from liability for payment of rent, the lease was lacking mutuality both of liability and of remedy and was, therefore, invalid and of no legal effect. It is true that, strictly speaking, a voluntary unincorporated association of this nature has no right to contract and cannot maintain a suit in the name of such voluntary unincorporated association alone. Laughlin v. Greene & Weare, 14 Iowa 92; Lewis v. Tilton, 64 Iowa 220, 19 N. W. 911, 52 Am. Rep. 436; Marshalltown Mut. Plate Glass Ins. Assn. v. Bendlage et al., 195 Iowa 1200, 191 N. W. 97, 193 N. W. 448; Hanley v. Telephone Co., 150 Iowa 198, 129 N. W. 807; Presbyterian Church v. Johnson, 213 Iowa 49, 238 N. W. 456.

We have also held that the individual who contracts in the name of a voluntary unincorporated association is personally liable thereon, in the absence of an agreement with the other party releasing him from personal liability, and that such other members of said association as authorize, consent to or ratify such undertaking are also personally liable, in the absence of an agreement exempting them. Keller v. Tracy, 11 Iowa 530; Lewis v. Tilton, 64 Iowa 220, 19 N. W. 911, 52 Am. Rep. 436; Reding v. Anderson, 72 Iowa 498, 34 N. W. 300; Comfort v. Graham, 87 Iowa 295, 54 N. W. 242; Andrew v. Pella Golf Club, 217 Iowa 577, 250 N. W. 709; Haldeman v. Addison, 221 Iowa 218, 265 N. W. 358; Murray v. Walker, 83 Iowa 202, 48 N. W. 1075.

The association name or title may be regarded as a designation of the individuals which it represents. Byam et al., v. Bickford, 140 Mass. 31, 2 N. E. 687. A member of such

association has the right to the joint use and enjoyment of its property, subject to its rules, during the time of his membership. However, such member owns no proportionate share of its property and has no right or individual interest therein. His right to its enjoyment is an incident to membership and ordinarily terminates with his membership. South Shore Country Club v. People, 228 Ill. 75, 81 N. E. 805, 12 L. R. A. (N. S.) 519, 119 Am. St. Rep. 417, 10 Ann. Cas. 383.

The personal liability of representatives and members of a voluntary unincorporated association appears to be based upon principles of agency. The person making the contract for the association has been held liable upon the theory that he was in fact a principal or held himself out as agent for a principal who had no legal status. Other members who authorize or ratify such contract are liable because it was made by their agent. Lewis v. Tilton, supra.

Conversely one who contracts with an association as a legal entity and capable of transacting business and receives money or other valuable consideration therefrom may not deny the validity of the contract on the ground that the association has no legal existence. In Reding v. Anderson et al., 72 Iowa 498, loc. cit. 500, 34 N. W. 300, 301, this court said:

"The law will not permit plaintiff to recognize the lease as long as it serves his purpose, and, after that, renounce and declare it void, and oust the association or the associates from the premises.

"The fact that the contract secures a leasehold interest in lands will not defeat the rights and obligations of the parties thereto. There are scores of unincorporated associations, for various purposes, in the state, whose business requires the use of rooms, halls and offices, which are rented and occupied by them. It would astonish the profession to learn, from our decision in this case, that leases in the name of such associations, signed by their officers or committees, are utterly void, and that the associates and their representatives may be turned out as trespassers at the will of the landlords."

Piper v. Taylor, 48 N. D. 967, 188 N. W. 171, was an action brought by the administratrix of the successor in interest of a lessor to quiet title against the members of an unincorporated association lessee. In that case the court ordered the admin-

istratrix to execute a new lease in accordance with a previous agreement for its extension.

Does the clause, no individual member shall be liable for rents or repairs, destroy the obligation or the remedy? The assets of the association, including the effects specifically mortgaged to the landlord, were not thereby exempted from the obligation. As above noted, the individual members had no severable interest in such assets but only the right to jointly enjoy the same while they were members. Therefore, exempting the members from liability did not exempt the assets of the association. The assets were liable for the obligations of the lease and such obligations could be legally enforced against said assets.

II. Appellees' prayer for enforcement of the painting clause of the agreement was made in a pleading denominated a cross-petition filed at the close of the evidence. Appellant complains because this was filed without the notice referred to in Code section 11155. However, that section refers to giving notice of a cross-petition filed against a co-defendant, or third party. Since the pleading in the case at bar prayed for affirmative relief against plaintiff, and not against a co-defendant or third party, it was not governed by that section and there is no showing that the trial court abused his discretion in permitting the same to remain on file.

Wherefore, the decree is affirmed.—Affirmed.

All JUSTICES concur.