ED. HARRIS, Petitioner, v. M. E. HUTCHINSON, Judge, and E. V. TUTTLE, Defendants.

Intoxicating liquors: INJUNCTION: CONTEMPT. One not a party to proceedings in which an injunctional order was issued, and who had no knowledge of the existence of the order, either actual or constructive, cannot be punished as for contempt for violating the order; even though the order was broad enough to include the act charged, and to include ·persons other than the immediate parties to the original suit. So that a bartender, having no knowledge of the existence of an injunction restraining the sale of liquor is not guilty of contempt for violation of the order, by selling liquor on the premises as the servant of third parties.

Same: INJUNCTION: NOTICE: CONTEMPT. A servant is not bound, nor is it his duty, to know of matters affecting the title or right of his employer to the use and enjoyment of his· premises; and an injunctional decree enjoining the traffic in intoxicating liquors on certain premises does not operate as a lien or incumbrance, and is insufficient as a public record to charge a servant with constructive notice of its contents so as to render him liable for contempt for its violation.

*Certiorari from Carroll District Court.*—HON. M. E. HUTCHINSON, Judge.

WEDNESDAY, APRIL 9, 1913.

PROCEEDINGS in certiorari to review the action of the court in finding the petitioner, Ed. Harris guilty of contempt in the violation of a certain decree of injunction against certain premises. Judgment of the lower court *Annulled.*

*L. H. Salinger* and *Ralph Maclean,* for petitioner.

*M. S. Odle,* for defendants.

GAYNOR, J.—In a certain action pending in the district court of Carroll county, Iowa, wherein E. V. Tuttle was plaintiff, Joe Judge, M. Bunting, and W. A. MacLagan were defendants, there was entered, on the 8th day of December, 1908, a decree of perpetual injunction against said defendants enjoining them from keeping and maintaining a liquor nuisance on the south twenty feet of lot 1, block 21, Carroll, Iowa. In that action it was adjudged and determined that the defendants Joe Bunting and W. A. MacLagan were occupying said premises and thereon keeping and maintaining a nuisance, and that the defendant MacLagan was the owner of the premises, and that the nuisance was maintained with his knowledge and consent. Thereupon the court entered an injunction forever and perpetually enjoining the defendants Judge and Bunting from keeping and maintaining a nuisance in or on the said premises or anywhere else in the Sixteenth judicial district by selling or keeping for sale, contrary to law, or by being concerned or engaged in any matter by themselves, their servants, agents, employes, or lessees in the business of keeping, with intent to sell, such liquors in said building unlawfully, or in any other building in the Sixteenth judicial district of Iowa, and strictly and perpetually enjoining all persons else from keeping or using said premises for the unlawful keeping or traffic in intoxicating liquors.

It appears that on the 4th day of April, 1912, the said Tuttle filed in the office of the clerk of said court an information against the petitioner herein, Ed. Harris, charging that, since the rendition of said decree, the said Harris has sold intoxicating liquors on said premises in violation of law and of the injunction, and praying that a warrant issue for his arrest; that he be arrested, brought before the court and adjudged in contempt of court, and dealt with as provided by law. That thereupon a warrant was issued and the said Harris arrested and brought before the court charged with contempt in the violation of said injunction. That, upon

the hearing of said cause, the court, finding that the injunction had been entered substantially as stated, entered the following decree:

That on or about the 19th day of July, A. D. 1912, the said defendant, Ed Harris, became a clerk or bartender in a saloon then maintained on the premises described in the said decree of injunction by the said Judge and Bunting, and continued as such until about the 23d day of December in said year. That when assuming, and while engaged in such employment, he had no actual knowledge of the existence of said decree, nor of the fact that during his said employment his employers had been adjudged guilty of contempt of court for violating the same. That said defendant, Ed Harris, sold liquors in said building from time to time during his employment, and that his said employers had not complied with the conditions of the law regarding such sales, and that such sales were illegal and in violation of law; and the evidence taken herein shows, and I so find, that the said defendant, Ed Harris, has violated said injunction by making sale, as the employee of the persons who were maintaining a liquor nuisance on said premises, notwithstanding his ignorance of the existence of said decree; and said evidence was duly taken down by the official shorthand reporter, and has been duly certified and filed and entered of record in said case; and the said defendant having been given an opportunity to show cause why he should not be dealt with as for contempt, and he having made no sufficient defense, it is therefore ordered, adjudged, and decreed that the said defendant be, and he is hereby, adjudged guilty of contempt of court for the violating of said injunction by selling intoxicating liquors in violation of law, as hereinbefore found, in said building and on said premises, and it is further ordered, adjudged, and decreed that the said Harris be, and he is hereby, fined in the sum of $200 and adjudged to pay the costs of this action, taxed at $———. Said costs shall include an attorney's fee at $50, to be taxed in favor of M. S. Odle, relator's attorney. It is further ordered, adjudged, and decreed that the said defendant, Ed Harris, be committed to the county jail of Carroll county, Iowa, until said fine be paid; said commitment, however, not to exceed one day for every three and one-third (3⅓) dollars of said fine, or a total of sixty (60) days, and the sheriff of Carroll county, Iowa, is

hereby ordered and directed to execute this order and judgment.

Upon the entering of such decree, the said Harris sued out a writ of certiorari and thereon brought the case to this court for determination.

All the facts material to this controversy are found and set out in the decree of the court, and all the facts therein set out are sustained by the evidence introduced on the trial of the cause. The question here is, Did the court, under the facts, err in finding the petitioner guilty of contempt and in assessing a fine against him therefor? There are many questions discussed in this case, but, in view of the position we take, it is not necessary or material that they be discussed or determined. The only question which we will consider is, Was the petitioner chargeable with notice of this decree, so that he became subject to it, and liable, as for contempt, in entering the employ of Judge and Bunting as a bartender, and as such dispensing liquors upon the premises covered by the injunction?

It will be noticed that the portion of the decree which goes to the right of Judge, Bunting, and MacLagan is much broader and more comprehensive than that under which, if at all, this petitioner can be held liable. The decree enjoined the defendants in the suit not only from maintaining a nuisance on these premises, but from maintaining a nuisance anywhere else within the Sixteenth judicial district, either by themselves or by their servants, agents, employees, or lessees, and from being in any manner concerned or engaged in the business in this building, or in any other building, within the Sixteenth judical district. This portion of the injunction goes to and touches the defendants in that suit. The portion of the decree which affects this petitioner, if at all, is that portion which provides that all other persons are strictly and perpetually enjoined from keeping or using the premises described in the decree for the unlawful keeping or traffic in intoxicating liquors.

The first question here presented for our determination is, Was Harris *keeping* or *using* the premises, decribed in the decree, at the time these contempt proceedings were instituted? Second. Was he charged with notice of this decree by reason of its having been entered upon the records of the court so as to charge him with contempt in acting as bartender on the premises and for the parties covered by the decree? It has never been held by any court that a party can be punished as for contempt in the violation of the terms of the decree of court, without either notice or knowledge of the existence of the decree. Courts are ever as watchful of the rights of the citizen as of the state, and it must be borne in mind that the same power that made the law that punished made also the law that protects.

It has been argued in this case that the petitioner, Harris, was at the time he was arrested engaged in a business, aiding and assisting therein, the carrying on of which was a violation of the general laws of this state, prohibiting the traffic in intoxicating liquors, and many authorities are cited to show that the acts charged against him, and proven, constitute a violation of the general statutes against such traffic. But it must be borne in mind that this action is not brought under the general law and to punish the petitioner for a violation of the general law against the sale, or keeping for sale, of intoxicating liquor. This proceeding is to punish the defendant for a contempt in the violation of the decree hereinbefore referred to, and it is intolerable even to think that a court, under the guise or pretense of punishing for a contempt of the decree or order, should punish for a violation of the law itself, and thereby deprive the defendant of his constitutional right to a trial by jury for such an offense.

1. INTOXICATING LIQUORS: injunction: contempt.

In considering and determining this case, we must also bear in mind that this petitioner, Harris, was not a party to the suit in which the decree was rendered. We must also

bear in mind that, in the proceeding against him for contempt, it was shown, and the court so found, that Harris had no actual knowledge of the existence of the decree at the time he entered the employment of Judge and Bunting, and had no knowledge of the existence of the decree during any of the time prior to his arrest for contempt. We lay down these principles as fundamental and established by authority, both in this country and in England.

1st. A person cannot be in contempt of an order, injunctional or otherwise, unless he is shown to have been served with such order, or to have had actual notice of its issuance, or unless he has, at the time of the commission of the act charged as contempt, personal knowledge of the injunctional order. It has been held that when a party is present in court at the time the order is made, and hears the same pronounced, he is bound by the order the same as if he had been actually served with the writ. See *Milne v. Van Buskirk*, 9 Iowa, 558; *Hawks v. Fellows*, 108 Iowa, 133; 10 Enc. Pleading & Prac. page 1101; *Coffey v. Gamble*, 117 Iowa, 545. But nowhere has it been held that one who was not a party to the proceedings in which the injunctional order was entered, and who had no notice or knowledge of the existence of the injunctional order, actual or constructive, can be punished as for contempt in the doing of the thing prohibited by the order, even though the decree in itself is broad enough to cover and include the act charged, and broad enough in its intent and purpose and in its injunctional force to include parties other than the immediate parties to the suit in which the order was entered.

It is contended, however, "that a decree of injunction, enjoining all persons from the illegal traffic in intoxicating liquors on certain described premises, operates as a lien or incumbrance on said premises, which is sufficient, as a public record, to impart constructive notice to all persons; and the state is not bound to show actual knowledge of the existence of

2. SAME: injunction: notice: contempt.

the decree on the part of one who is charged with contempt in the violation of said injunction, for the reason that the injunctional order, so entered, and in this case entered, operates against the premises itself, and the use of the particular premises,'' and in support of this contention we are directed to the cases of *Silvers v. Traverse*, 82 Iowa, 52, and *Dermedy v. Jackson*, 147 Iowa, 620. It is contended that under these decisions a different rule obtains in cases of this kind, and a different rule is observed and enforced in injunctional orders involving the sale of intoxicating liquors. A careful analysis of these cases will show that the contention is not well taken.

In the case of *Silvers v. Traverse* it was not shown that the party charged with contempt did not have notice or knowledge of the existence of the decree at the time of the commission of the act charged as constituting a nuisance. It appears that the injunctional decree was entered against the lessor of the party charged with contempt, and that the decree in its provisions affected his lessor's right and interest in the property, and limited and cut off his power to use the property for the unlawful keeping and selling of intoxicating liquors; that the decree was a restriction upon the use of the property which followed as a burden, and, as it were, an incumbrance; and it was held that the party charged with contempt, having leased the property, took it subject to this restriction and burden, and was therefore charged with notice of the existence of the injunctional order, having affected the real estate itself, limiting and cutting off the power to use the property for the unlawful keeping or selling of intoxicating liquors; that therefore all persons dealing with the property, or acquiring interest therein, were charged with notice of the proceedings and of the existence of the decree, and the court, in support of this contention, cites section 2628 of the Code of 1886, which reads as follows: ''When a petition has been filed affecting real estate, the action is pending so as to charge

third persons with notice of its pendency, and while pending,
no interests can be acquired by a third person in the sub-
ject-matter thereof, as against the plaintiff's title, if the real
property affected be situated in the county where the peti-
tion is filed.'' While the language in this decision is broad
in its argumentative features, the decison itself really rests
upon the fact that the party charged in that case was the
lessee of the party enjoined, and as such lessee took posses-
sion of and used the property affected by the decree. The
opinion says, in substance and effect: The decree was a
restriction upon the use of the property which followed it
as a burden. That it placed an incumbrance or restriction
upon the right to use the property, and that the party
charged, having taken the property from the party enjoined
and put it to a use violative of the terms of the decree, he
was charged with notice of all the terms of the injunctional
order, in so far as it affected the property so used.

In the case of *Dermedy v. Jackson, supra,* it is said:
''Whether ignorance of the decree would have been a good
showing of excuse or defense, we have no occasion to de-
termine. No such excuse or defense was offered, either by
pleading or evidence.'' The facts in this case were sub-
stantially the same, so far as the relationship of the party
charged to the property was concerned, as were the facts in
*Silver v. Traverse.* The decision is practically bottomed on
that case, and the holding, touching the matter of notice, goes
no farther than the facts upon which it rests, and lays down
no other or different rule. It is true that in this opinion the
following words were used: ''The decree was sufficiently
broad in its terms to enjoin all persons from maintaining a
nuisance on the premises therein described, and it was suffi-
cient, as a public record, to impart constructive notice to all
persons.'' It is evident that those words were used with ref-
erence to the facts in that particular case, and where it says,
''It was sufficient as a public record to impart constructive
notice to all persons,'' it evidently meant, and should be

understood as meaning, all persons dealing with the property as purchaser, or lessee, or dealing with the property itself.

We find nothing in these decisions that indicates that a different rule obtains in cases where one is charged with contempt in the violation of a liquor injunction than obtains in other cases where one is charged with a violation of an injunctional decree; and we find nothing in these cases to indicate a holding on the part of this court that one could be convicted of contempt in the violation of a decree where he had neither actual nor constructive notice of its existence. Every man is presumed to know the law; but we know of no authority for holding that every man is presumed to know the scope, purpose, and intendment, or even the existence, of decrees entered by every court in causes to which he was not a party. No man is ever presumed to know that which, from the very nature of the thing itself, it was not his duty to know, and no reason exists why he should know.

The servant of the master is not presumed to know that which affects his master's title in and to his master's property, or that which affects the master's right to the use and occupancy of his property, because it was not his duty to know, and no reason exists why he should know. A party dealing with real property is presumed to know, when the same is a matter of record, that which affects the title, or the right to the use, occupancy, or enjoyment of the property. These principles are elementary.

In this case Harris was but the servant of Judge and Bunting, and, being but a servant, is not presumed to know, nor was it his duty to know, that which affected their title, or their right to the occupancy, use, or enjoyment of the premises. It was not his duty to know this, nor was there any reason why he should know this; and therefore, being but a servant in and about his master's business, he was not charged, by reason of such relationship, with notice or knowledge of the limitation in the decree affecting their right to the use and occupancy of the premises, and we therefore hold that

the court erred in holding the petitioner herein, Harris, guilty of contempt under the facts disclosed in this case, and the order, therefore, of conviction entered is *Annulled.*