UNITED PACKING HOUSE WORKERS OF AMERICA (C. I. O.) LOCAL 38 et al., Petitioners, v. HONORABLE TOM BOYNTON, Judge, Respondent.

No. 47301.

(Reported in 35 N. W. 2d 881)

FEBRUARY 8, 1949.

George D. Dunn, of Mason City, for petitioners.

Clough & Clough, of Mason City, for respondent.

HAYS, J.—This cause comes here on a writ of certiorari for revision of an order of the trial court, to punish the petitioners for a contempt. It is based upon the alleged violation of a writ of temporary injunction. Rule 330, Rules of Civil Procedure, makes violation of any temporary or permanent injunction contempt and punishable accordingly. Section 665.11, Code of 1946, prohibits an appeal in contempt proceedings but provides for revision by certiorari.

Two distinct questions are involved and raised by the petitioners' propositions relied upon for sustaining the writ. They are: (1) the validity of the temporary injunction, and (2) the correctness of the contempt judgments. See Wells v. District Court, 126 Iowa 340, 102 N. W. 106; Mason v. District Court, 209 Iowa 774, 229 N. W. 168.

The record shows the following facts:

Armour & Company operates a packing plant in Mason City, Iowa, under the name of Jacob E. Decker & Sons. Employed there are members of the United Packing House Workers of America (C. I. O.), Local 38. On March 16, 1948, a strike was called at said packing plant by said Local 38 and its members. On March 27, 1948, Armour & Company filed a petition, supported by affidavit, asking for a temporary injunction naming as defendants the following: "United Packing House Workers of America (C. I. O.), Local 38; Charles Kranz, individually and as president of said Union; Arthur Costello, individually and as chairman of the strike committee; Clarence Ramsey, individually and as cochairman of the strike committee; Russell Bull, individually and as district director of the United Packing House Workers of America, and all other members of the United Packing House Workers of America (C. I. O.), Local 38, whose names are unknown to plaintiff." The hearing was set upon notice of not less than one day.

The notice was served upon each of the individuals above named, except Russell Bull, as an individual and in his official capacity. It was served on Local 38 by delivery of a copy to Charles Kranz, vice-president and acting president of said Union. The hearing was had on April 3, 1948, at which hearing default was entered against Charles Kranz, individually and as

president of Local 38; Arthur Costello, individually and as chairman of the strike committee; and Clarence Ramsey, individually and as cochairman of the strike committee. G. D. Dunn, a practicing attorney, was appointed to represent "All other members of the United Packing House Workers of America (C. I. O.), Local 38, whose names are unknown to plaintiff."

On April 12, 1948, a decree was entered granting a temporary injunction against United Packing House Workers of America (C. I. O.) Local 38; Charles Kranz, individually and as president of the Union; Arthur Costello, individually and as chairman of the strike committee; Clarence Ramsey, individually and as cochairman of the strike committee; and all other members of the United Packing House Workers of America (C. I. O.) Local 38, whose names are unknown to the plaintiff.

A temporary writ, in accordance with the decree, was served April 12, 1948, on Charles Kranz, individually and as president of said Union; Clarence Ramsey, individually and as cochairman of the strike committee; and on United Packing House Workers of America (C. I. O.) Local 38; and all other members of the United Packing House Workers of America (C. I. O.) Local 38, whose names are unknown, an organization, by delivery of a copy thereof to Charles Kranz, vice-president and acting president of said Union. It was served on Arthur Costello, individually and as chairman of the strike committee, on April 13, 1948.

On April 14, 1948, said Armour & Company filed a report as to a violation of the temporary writ and petition for a citation to violators of said injunction to show cause why they should not be punished for contempt. The alleged violators were named in the petition and in affidavits attached thereto. They are: United Packing House Workers of America (C. I. O.) Local 38; Charles Kranz, individually and in official capacity; Arthur Costello, individually and in official capacity; Clarence Ramsey, individually and in official capacity; Russell Bull, individually and in official capacity; and all other members of the United Packing House Workers of America (C. I. O.) Local 38, whose names are unknown to plaintiff. Ocie Lysne, Isabel Gomez, Juanita Berrigan, Abe Meecham, Vera Smalldridge,

Merle Smalldridge, Mervyle Arndt, Ed A. Newman, Francis Cahalan, John Gomaz, Gilbert T. Christian, Howard Crane Sr., Henry Legler Sr., Henry Legler Jr., Louis Solum, Charles D. Kranz, Lambert Menke, John J. Frank, Ruth Schmidt, Helen Holtzendorf, O. J. Martin, Leola Von Wald, Albert Finer, George Maskarina, Forrest Abbott, Lynn Belding, George Ashlock, Merle Rogers, Marvin Mulhern, Ruth Holmes, Louis Stickney, Theresia Frank, Ulanda Nasheim, Esther Kennedy, Maxine Carpenter, Carl Nessett, Bernard Schmidt, Overton Burrell, Vera Murray, Jess Stickney, Alex Romig, George Romig, Ruth Menke, Howard May, Jake Alt, Edward C. Melsh, and L. C. Palmer.

All of said above-named defendants were served with notice of the citation except Russell Bull. On the hearing all of the defendants were found guilty of contempt except Clarence Ramsey, individually and officially; Russell Bull, individually and officially; and Ed. C. Melsh. As to them, the citation was dismissed. Judgment was entered against each of the other defendants, petitioners here, as follows:

"United Packing House Workers of America (C. I. O.), Local 38, fine of $500.

"Charles Kranz, individually and as acting president of said Union, $500, or in case of failure to pay said fine, that he be committed to the jail of Cerro Gordo county for 150 days, unless said fine is sooner paid.

"Arthur Costello, individually and as chairman of the strike committee, $500, or in case of failure to pay said fine, that he be committed * * * for 150 days * * *.

"Isabel Gomez, Ocie Lysne, and Juanita Berrigan, each a fine of $200, or in case of failure to pay said fine, that each be committed * * * for 60 days * * *."

Each of the rest of above-named petitioners a $100 fine, or in case of failure to pay said fine, each to be committed to the jail of Cerro Gordo county for thirty days, unless said fine is sooner paid.

Petitioners asserted in the contempt hearing, as they did in the hearing on the temporary injunction, that the injunction was void. They urge the same here, as permitted by Rule 315,

Rules of Civil Procedure, as a basis for the sustaining of the writ of certiorari. Two propositions are advanced: (1) that Local 38, being an unincorporated association not for pecuniary profit, has no legal entity and cannot sue or be sued (2) the proceedings, not being a class or representative action, did not give the court jurisdiction over the members of Local 38 who were not specifically named and personally served with notice of the injunctive proceedings.

I. Was the original injunctive proceeding a class action? Rule 42, Rules of Civil Procedure, provides:

"If the persons composing a class are so numerous that it is impracticable to bring all before the court, such number of them as will insure adequate representation of all may sue or be sued on behalf of all, where the character of the right involved is: * * * (c) Several, and a common question of law or fact affects the several rights, and a common relief is sought."

The record clearly shows that the members of Local 38 are so numerous that it is impractical to bring them all before the court. The right involved is several, as to the various members; the question involved is a common question of law and the relief asked was common to all. While nowhere in the petition or notices is it categorically stated that the action is of a representative or class nature, Local 38, its officers, both individually and officially, and all other members of the local whose names are unknown to the plaintiff are named as defendants. Service was made upon the named defendants, as officials of the organization, Local 38, as well as individuals. The organization being an unincorporated association, no purpose or reason appears for such inclusion of the officers in their official capacity, except as they represent the group or organization. Under Rule 46, Rules of Civil Procedure, the trial court found the parties before it (the officials of Local 38) adequately represented the group. No member of the class appeared and in accordance with Rule 47, Rules of Civil Procedure, an attorney was appointed to represent it. In this finding we find no error. It was clearly a class action.

II.    Petitioners' next proposition is that the injunction proceedings were void so far as Local 38 is concerned.

■    It is conceded in the record that Local 38 is an unincorporated association not for pecuniary profit. It is a well-established rule at common law, in the absence of an enabling or permissive statute, an unincorporated voluntary association is not capable of being sued in its common or association name, for the reason that such association, in the absence of statutes recognizing it, has no legal entity distinct from that of its members. Wilson v. Airline Coal Co., 215 Iowa 855, 246 N. W. 753; 4 Am. Jur., Associations and Clubs, section 46; annotation 149 A. L. R. 508, 510. 7 C. J. S., Associations, section 36a(1) states:

"Generally speaking, an association may not be sued as such in the absence of statute changing the rule. But the trend of modern decisions is to permit suit against an association where there are grounds of estoppel or waiver, or *where the case is one demanding an extension of the equitable doctrine of representation of parties.*" (Italics added.)

It is asserted by respondent that chapter 296, Acts of Fifty-second General Assembly of Iowa, authorizes suit against Local 38, as such, similar to the instant one, in certain specific cases but an examination thereof clearly shows that it is not applicable to the present situation. The same is true as to chapter 297 thereof. There is no statute in Iowa which authorizes suit against this organization, as such, under the facts here involved.

However, in accordance with the modern trend, Iowa now permits such actions where estoppel or waiver exists (Lamm v. Stoen, 226 Iowa 622, 284 N. W. 465, 121 A. L. R. 627) or where the case is one demanding extension of the equitable doctrine of representation of parties. See Nissen v. International Brotherhood of Teamsters, 229 Iowa 1028, 295 N. W. 858, 141 A. L. R. 598, where we held an action against a labor union in which the union, its officers, individually and officially, as representatives of the entire membership are named as defendants is maintainable to hold the labor union accountable for its obligations and responsibilities even though a voluntary, unincorporated association cannot sue or be sued by its name alone.

In the instant case the trial court had jurisdiction to issue a temporary injunction which is conclusive upon the parties. Restatement of the Law, Judgments, section 26 and section 86; annotation 132 A. L. R. 749 and 164 A. L. R. 312, 313.

III. The decree and temporary writ of injunction for a violation of which the contempt citation was issued provided that the defendants named therein:

"* * * are hereby strictly enjoined and restrained from mass picketing at the gates of the plaintiff's packing plant * * * or vicinity thereof, and from interfering with or preventing the peaceful ingress or egress of persons in plaintiff's employ not on strike and from preventing or interfering with the peaceful ingress or egress to or from plaintiff's said plant over the switch tracks leading into said plant of cars being switched into said plant for the purpose of loading and shipping out of said plant property and commodities owned by plaintiff, and particularly from standing upon said switch tracks or so nearly thereto as to interfere with the act of switching cars into or out of the said plant.

"It is further ordered * * * that the defendants and each and all of them refrain from interfering by force, violence, or threats with any persons desiring to enter or leave the said plant at any time and place.

"It is not the intention of this decree to prevent the defendants or any of them from lawful and peaceful picketing without force, threats, violence, or intimidation.

"For the guidance of the defendants the court further finds that under the circumstances the having of more than 5 pickets at either gate at one time would constitute mass picketing; and further, that the approach to any person entering the plant or desiring to enter the plant by more than 2 individual pickets would constitute intimidation; and likewise, the presence of any picket on the railroad track when cars or the switch engine are using or about to use the track would constitute unlawful picketing."

Petitioners present eight propositions under this division of the case as a basis for sustaining the writ.

220

■ IV. It is asserted that the trial court erred in not ruling on objections to the evidence, which failure was prejudicial in view of the many defendants. At the outset of the trial, the court stated: "The court apprehends that this cause is triable in equity; I don't know that there is any direct authority, but having that in view, there will be no rulings on the objections." No objection was interposed then nor any later request made for rulings. This objection cannot be urged here for the first time. Marshall v. Pratt, 195 Iowa 741, 185 N. W. 5; Phelps v. Linnan, 174 Iowa 138, 156 N. W. 294.

■ V. Petitioners further allege that the trial court received and acted upon incompetent testimony. There is no merit to this claim. In Joyner v. Utterback, 196 Iowa 1040, 195 N. W. 594, we held it will be presumed on certiorari that incompetent testimony which was received in the trial court subject to objections was not given any consideration in the final determination, the record revealing other competent testimony amply supporting the verdict. See also Russell v. Anderson, 141 Iowa 533, 120 N. W. 89; Doyle v. Willcockson, 184 Iowa 757, 169 N. W. 241; State v. Baker, 222 Iowa 903, 270 N. W. 359.

■ VI. It is further asserted that petitioners were compelled to give incriminating evidence against themselves. Only one defendant in the contempt hearing was called as a witness. He is Edward C. Melsh. On cross-examination he was asked whether he was a member of Local 38 and he replied: "That's right." No objection was interposed or a claim of privilege made. There was, however, a motion to strike. Later he was asked if he recognized any of the parties present at the time in question. He refused to answer "because it tends to incriminate the rest of the defendants." The court required an answer and correctly so. The plea of self-incrimination is a personal one and does not extend to codefendants. But irrespective of what the rule may be as to self-incrimination, it is not before us, as the trial court dismissed the citation as to Edward C. Melsh.

■ VII. Petitioners also assert that the court erred in assessing fines in the maximum amount against an unincorporated association and also assessing fines in the maximum

amount against individual members of that association, all arising from the same set of facts and the same trial. This is based upon the theory that since the association is not a legal entity, the fine is only against the individual members thereof. Section 665.4, subsection 2, provides: "In all other courts of record, by a fine not exceeding five hundred dollars or by imprisonment in a county jail not exceeding six months, or by both such fine and imprisonment." If petitioners' theory is correct the fine of $500 against the Local 38 might be construed as making the fine against Kranz and Costello in excess of the maximum of $500.

However, as above stated, upon the theory of a representative action unincorporated associations such as Local 38 assume a status of a legal entity although not suable as such. No authority in point upon this theory is cited by either party. While not exactly in point but somewhat analogous is Ex parte Genecov, 143 Tex. 476, 481, 186 S. W. 2d 225, 227, 160 A. L. R. 1099, 1104. There the corporation and the president thereof were each fined for contempt, and it was claimed such amounted to a double punishment for the same offense. The court said:

"The corporation and the president are distinct entities and no more reason is perceived for adding the punishments assessed against the two of them for a contemptuous act in determining the court's jurisdiction than for adding the punishments assessed against two individuals under the same circumstances for the same purpose."

We find no error here.

VIII. Petitioners assert that the trial court should require respondent to elect between the association, Local 38, and the individuals cited as members thereof. Under the rule of liability of the association through the equitable rule of representative actions no election was required. Furthermore, if petitioners' theory were correct no election could be made, as the association was not legally in court. The trial court was correct.

IX. While petitioners advanced ten propositions as a basis for sustaining the writ, two of them deal with the same question

and may be so considered. They in effect alleged that there is insufficient evidence to sustain the findings of the trial court.

This raises the most difficult question presented under this writ.

In Andreano v. Utterback, 202 Iowa 570, 571, 210 N. W. 780, we said:

"A contempt proceeding, in a strict sense, is neither civil nor criminal, but, for want of a better term, it is called quasi criminal. * * * Clearly, the finding of the court that a contempt has been committed is not conclusive on review * * *. The findings and decision of the lower court should not be 'lightly reversed,' but the guilt of the accused must be shown by clear and satisfactory evidence."

See also Nies v. Anderson, 179 Iowa 326, 161 N. W. 316; McNamara v. Utterback, Iowa, 200 N. W. 699; Burtch v. Zeuch, 200 Iowa 49, 202 N. W. 542, 39 A. L. R. 1349; Bisignano v. Municipal Court, 237 Iowa 895, 23 N. W. 2d 523.

In an annotation in 15 A. L. R. 386, 387, the general rule is said to be that one who violates an injunction is guilty of contempt, although he is not a party to the injunction suit, if he has notice or knowledge of the injunctive order, and is within the class of persons whose conduct is intended to be restrained. Again, at page 398, same annotation, it is said:

"It may be stated as a general rule that one not a party to the injunction suit cannot be charged with contempt in violating the injunction, in the absence of service upon him of the injunctional order, or a showing that he had actual knowledge thereof."

See also Harris v. Hutchinson, 160 Iowa 149, 140 N. W. 830, 44 L. R. A., N. S., 1035; Dermedy v. Jackson, 147 Iowa 620, 125 N. W. 228; Keenhold v. Dudley, 178 Iowa 526, 159 N. W. 1018.

In the instant case all of the petitioners except Local 38, Costello, and Kranz are parties only by representation. They were not served personally with notice of the injunction but only by representation. Yet under the record we are satisfied

that petitioners must have known of the injunction and its contents and the trial court had jurisdiction to adjudge the petitioners guilty of contempt. Carey v. District Court, 226 Iowa 717, 285 N. W. 236. The record shows that not only were the officials of the local fully notified, but the terms of the injunction were set forth at length in the Mason City Globe-Gazette, a daily newspaper, and announced over the radio from station KGLO, a local station, at least twice on the same day, April 12, 1948.

The power to proceed summarily without formal indictment and without a jury to hear charges of contempt of court and to assess punishment, although statutory in Iowa, has always been an attribute of all courts of record in every stage of development of our system of judicial procedure. The object is not to punish an offense but to compel obedience and respect for the order of the court. State v. Baker, 222 Iowa 903, 270 N. W. 359. The keystone of this government has been, is, and must be, respect for and obedience to orders of the courts. Courts should not hesitate to use the powers granted to them by contempt actions in obtaining obedience to their orders, but all courts should recognize it as an extremely dictatorial weapon and use it only where both the violation and the violator are identified by clear, convincing and satisfactory proof.

The application for a citation alleges six violations of the terms of the injunction. They are: (1) physical attack upon two employees leaving the plant on April 12, 1948 (2) maintaining more than five persons on the picket line at the entrance to the plant and more than two pickets approaching persons seeking to enter or leave the plant (3) blockading the entrance to plant by placing an automobile crossways in the street (4) refusing admittance to people having business at the plant (5) use of force, violence and threats against persons seeking to enter or leave the plant, and (6) attacking a photographer of the Mason City Globe-Gazette.

The record establishes by clear, convincing and satisfactory proof that Adeline Fletcher and Marian Weiland, employees, were attacked on the evening of April 12, 1948, as they were leaving the plant. The assailants are positively identified as

Isabel Gomez, Juanita Berrigan and Ocie Lysne. They are also clearly identified as being members of Local 38. The finding of the trial court that they were guilty of contempt is amply sustained.

It appears from the record that an automobile was placed crossways of the street approaching the entrance to the plant in such a manner as to prevent trucks loaded with hogs from entering the plant. This clearly is a violation of the injunction. Merle Smalldridge is satisfactorily identified as the driver of this car and as being a member of Local 38. He was properly adjudged to be in contempt.

It is clearly established that several trucks, loaded with hogs for delivery to the plant, were stopped by groups of seven to ten individuals. At least ten witnesses identify Arthur Costello as being among this group and seemingly directing the activities of the group. He clearly was in contempt.

Charles Kranz is identified by at least three witnesses as being in the group of eight or ten which refused the trucks permission to enter the plant.

George Maskarina is identified as being in the group around the truck and was quite demonstrative. Forrest Abbott, Lynn Belding, George Ashlock, Francis Cahalan, Ed Newman, Overton Burrell, John J. Frank and Howard May are shown to have been in the group that met the trucks and prevented them from entering the plant. The record sustains the court's finding.

As to the rest of the petitioners, it appears without question that they were in the vicinity of the plant at the time in question. Their identification is established by four witnesses. Two of the four, LeRoy McKee and Roger Gast, using a sixteen-millimeter camera took moving pictures on the morning of the 14th of April. The camera was set from one hundred and fifty to four hundred and fifty feet from the disturbances. On the trial in the lower court, and in this court, these films were run, and while they show numerous people gathered on the sidewalks, the parking, and in the street, they were of little probative value. They show a touring car blocking the street and some trucks stopped with several men surrounding them, but, except in a few instances, individuals are not connected with

the disturbances except by such general expressions, as the film was run, as: "This is Kranz right here; here is Ashlock; there is Lynn Belding there; that is Merle Rogers there; this is Art Costello; that is Cownie from Des Moines."

Two other witnesses, Fred Loomer and Leo J. O'Keefe, plant employees, acting on instructions from the plant management walked down the street and back to "see what was going on up there" and "who was engaged in the disturbances." When they returned to the plant they made notes of those they recognized. They made the affidavits attached to the application for the citation, in which the various defendants there (petitioners here) were named. They were asked: "Q. And this is the names you recognized of the persons you personally knew were there that morning? A. Yes sir. Q. In that street and on the sidewalks and around the trucks, all over the place, is that right? A. Yes sir."

In attempting to connect these individuals with the alleged violations, they testified in part as follows:

"A. I did see Abe Meecham some place between that truck and the M. & St. L. tracks on Fifteenth St. * * * I next saw Vera Smalldridge. I saw her on the sidewalk on the south side of 15th Street talking to some other girls; I saw Merle Smalldridge, he was some place in the middle of the street; I saw Mervyle Arndt; I saw Ed A. Newman; I saw Francis Cahalan; I saw John Gomaz. Q. You know these people? A. Yes, or I wouldn't have put their names down here [the affidavit]. I saw Gilbert Christian; I saw Howard Crane Sr.; I saw Henry Legler Sr.; I saw Henry Legler Jr.; I saw Louis Solum; I saw Charles Kranz, he was standing in front of one of these trucks on the left-hand side of the street up there. * * * I saw Lambert Menke; he was standing down close to the M. & St. L. tracks, probably at the regular picket line; I saw John J. Frank and he was up close to the trucks on 15th Street; I saw Ruth Schmidt; Helen Holtzendorf standing on the sidewalk on the south side of 15th Street, probably right in the intersection of 15th and Penn; I saw O. J. Martin; I saw Leola Von Wald on the sidewalk on the north side of the street; * * * I saw Forrest Abbott at about the same spot; I saw Lynn Belding

standing in the center of the intersection at 15th and Penn, in fact, when the trucks were allowed to move he directed them to turn south. * * * I saw George Ashlock; George Ashlock was riding on one of the trucks on the side when the truck went from 15th Street and made the turn south. I saw Merle Rogers; I saw Marvin Mulhern. Q. What were they doing? A. Marvin Mulhern and Merle Rogers were both on the picket line as well; Ruth Holmes; Louis Stickney; Theresia Frank * * *. I saw Howard May, he was up close to these trucks up there stopped; Jake Alt, I saw him, he lives right along the street; I saw him on the sidewalk in front of his own house. Q. Was he with this group of people picketing? A. They weren't all together. Q. But he was a part of this group? A. That's right."

The foregoing shows in general the identification of the individual and his connection with the affair. Except as each individual is shown to be actively connected with some disturbance, mere presence in the vicinity, merely "in that street and on the sidewalks and around the trucks, all over the place" is not clear, convincing and satisfactory proof that they are in contempt of court by violating the injunction. As stated in Crosby v. Clock, 208 Iowa 472, 479, 225 N. W. 954, 957, quoting from Skiff v. State of Iowa, 2 (Clarke) Iowa 550:

"'Ordinarily, it is true, the presumption is in favor of the regularity of the proceedings of the district court, and that such court had (when the contrary is not shown) sufficient evidence to justify the judgment rendered. In cases of contempt, however, the provision of the Code is positive, that the evidence in one case and the facts in the other shall be filed and preserved, or entered on the record. The power to punish for contempt is a necessary one; but, at the same time, it should be carefully exercised, in strict accordance with law and a due regard to the rights of those charged.' "

Except as to Local 38, Arthur Costello, Charles Kranz, Isabel Gomez, Juanita Berrigan, Ocie Lysne, George Maskarina, Forrest Abbott, Lynn Belding, George Ashlock, Francis Cahalan, Ed Newman, and Merle Smalldridge, Overton Burrell, John J.

Frank, and Howard May, the writ of certiorari must be sustained and the citation dismissed. As to those named in this paragraph, the finding of guilty is amply sustained.

One further question remains. Petitioners assert that the judgments rendered are excessive. As before noted, the maximum provided by statute, section 665.4, subsection 2, Code of 1946, is a fine of $500 or six months in jail or both. Only in the case of Local 38 was the maximum judgment of $500 pronounced—imprisonment, of course, not being applicable. As to Arthur Costello and Charles Kranz, there was a fine of $500 each, and in default thereof one hundred fifty days in jail. Both parties were direct parties to the injunction proceedings; they were both prominent in the union and actively in charge of the strike. Their violation was clearly an open defiance of the court order and the punishment invoked was commensurate with the acts done. Isabel Gomez, Juanita Berrigan, and Ocie Lysne, were each fined $200, and in default thereof sixty days in jail. While they were parties only by being members of a class, their act consisted of a physical attack upon two workers who had not joined in the strike, which was clearly a violation of the injunction. The judgment was less than one half of the maximum provided by statute and is not excessive. Each of the other petitioners were fined $100, and in default thereof thirty days in jail. These judgments are well within the range established by statute. There does not appear to be an abuse of the discretion resting in the trial court and we are not inclined to reduce them.

For the reasons above set forth the writ is—Sustained in part, annulled in part and remanded.

All JUSTICES concur.