**Myron REIHE et al., Plaintiffs,**

**v.**

**The DISTRICT COURT OF CRAWFORD COUNTY, Honorable A. J. Braginton, Presiding Judge, Defendants.**

**No. 54087.**

Supreme Court of Iowa.

March 11, 1971.

Harry H. Smith, Sioux City, for plaintiffs.

Norelius & Norelius, Denison, and P. L. Nymann, Dakota City, Neb., for defendants.

MASON, Justice.

This is a certiorari proceeding to review the order of the district court of Crawford county, A. J. Braginton, Judge, imposing sentences on 24 persons found to be in contempt in that they violated the trial court's temporary order and injunction previously issued.

Iowa Beef Packers, Inc., a Delaware corporation authorized to do business in Iowa, maintains a place of business and meat packing plant at Denison in Crawford county. The corporation also owns and maintains similar plants in Dakota City, Nebraska, Mason City, Fort Dodge and LeMars, Iowa. Amalgamated Meat Cutters and Butcher Workmen of North America, A.F.L.–C.I.O., is an international labor union and is the representative and bargaining agent of production and maintenance workers and yard employees at all Iowa Beef Packers' plants except the one operated at Denison. The Denison employees were members of their own local independent union.

On October 27, 1969, employees of all the plants mentioned, except those at Denison, were on strike. The Denison plant was in normal operation. On that date a large number of striking employees from the Dakota City plant appeared at the Denison plant and positioned themselves on a farm-to-market highway adjacent to the packing plant to assist them in their strike against Iowa Beef Packers. The Denison employees did not participate in this group.

The same day Iowa Beef Packers filed petition in the Crawford district court seeking a temporary and permanent injunction against Amalgamated Meat Cutters and Butcher Workmen of North America, A.F.L.–C.I.O., Lester Peck, Elmer Hamilton, Leonard Vrieze, George Conen, David Blair, Myron Reihe, and William Hodgins. Individual defendants named in the injunction proceeding were alleged to occupy a relation with reference to the union and members thereof sufficient to insure adequate representation of all members of the class and were sued in their individual and representative capacities.

Later in the day upon presentation of the petition Judge Braginton entered an order for issuance of temporary injunction directed to the named defendants and all those acting in consort with them. It provided in part:

"1. That a Temporary Restraining Order and Injunction be issued restraining and enjoining the Defendants and each of them and all those acting in consort with them from picketing the Plaintiff's premises in Denison, Iowa, with more than six (6) men at any one time at each end of the public highway and road abutting on Plaintiff's property in Denison, Iowa; from obstructing or stopping or interfering with persons about to enter or intending the enter Plaintiff's premises for purposes of work or otherwise; from obstructing or stopping or interfering with the use and enjoyment of the public highway leading to and from said plant; from entering or going upon the Plaintiff's property in Denison or permitting the pickets from going on Plaintiff's property and from engaging in mass picketing upon Plaintiff's property or upon the public highways leading to and from the Plaintiff's property.

"2. That the said Defendants and each and every one of them and those acting in consort and in council with them are further restrained and enjoined from hindering, delaying, interfering with or in any manner obstructing the operation of trucks, trailers, and/or motor vehicles of the Plaintiff or of any other person or persons, or the receiving, forwarding, shipping, delivering or handling of cattle, beef products, freight, goods or other

property of Plaintiff, its agents, employees, or representatives or from in any manner or way in obstructing the free flow of traffic through and across the public road and highway lying adjacent to the plaintiff's plant in and near Denison, Iowa.

"3. That the said Defendants and each and every one of them and those acting in consort with them are restrained and enjoined from entering or going upon the Plaintiff's property in Denison, or permitting the pickets from going or entering upon Plaintiff's property in Denison unless actually engaged in their regular and usual type of employment and from engaging in mass picketing upon Plaintiff's property or upon the public highway leading to and from the plant property."

In the afternoon of October 27 service of original notice and injunction was made on Lester Peck for himself and for Myron Reihe, Amalgamated, and William Hodgins and the writ of injunction and order were read and explained by the Crawford county deputy sheriff to a group of pickets at the Denison plant.

News of the injunction describing the limitations of pickets to 12 was published as a front-page article in the Des Moines Register and the Sioux City Journal October 28 and the Fort Dodge Messenger October 29. Copies of the news stories were received in evidence as exhibits at the contempt hearing. News of the issuance of the temporary injunction was carried on the Associated Press wire October 27 and 28. Fifty Iowa newspapers carry this wire service including the Fort Dodge Messenger, Sioux City Journal and Des Moines Register & Tribune. Over fifty radio and TV stations in Iowa receive this wire service including television stations in Mason City, Fort Dodge and channel 9 in Sioux City. This channel carried this item of news the evening of October 27.

A motion to dismiss the ex parte temporary injunction was immediately filed on behalf of those served and hearing was set for November 6. Between 4:30 and 5:00 a. m. Monday, November 8, while the hearing was in recess over the weekend, an estimated 150 to 200 people gathered at the Denison plant on the farm-to-market highway near one of the previously established picket lines authorized by the temporary injunction.

In response to a telephone call from Iowa Beef Packers, the Crawford county sheriff and his deputy went to the plant between 4:30 and 5:00 a. m. At the sheriff's request four Denison police officers followed within a few minutes. The sheriff talked to some of the group, told them there was an injunction and they could be arrested for unlawful assembly.

The sheriff testified that people congregating in the area interfered with the flow of traffic on the farm-to-market road normally used by farmers, school buses, people going to the city dump or highway commission offices, those going to work in Denison and people desiring to enter the packing plant. He cited the difficulty the driver of a piggy-back trailer had in attempting to enter the plant grounds because of the crowd and the incident of rocks being thrown at one beef packer car carrying personnel into the plant.

As he went to arrest the person throwing the rocks, the sheriff was grabbed by a number of people, struck on the back a few times, his helmet knocked off and he was called an obscene name. When the deputy attempted to aid, he was knocked down and his glasses broken. Things appeared to get out of hand. The sheriff described the crowd as a mass of people milling around. There was swearing and yelling going on. He was unable to identify the regular pickets who had been there earlier from the group that gathered later. One man was observed carrying a baseball bat and another, a can of beer. The sheriff and deputy estimated about 25 percent of the crowd was just standing around and 30 to 40 percent showed evidence of drinking.

Numerous windows in the plant building were broken by rocks and chunks of cement thrown by persons in the crowd. Two trailers in the company yards were set afire. The Denison fire department was called and responded but could not use the road for entrance to the plant because of the crowd. The sheriff advised them by radio to turn around and use another road as he was afraid someone would damage the truck or injure the firemen.

The deputy sheriff told of going to the vicinity of the packing plant the afternoon of October 27 to serve the writ of injunction and original notice on some defendants in that proceeding. He read the injunction to the pickets at the south entrance. When asked a number of questions about it, he suggested the people contact their union head or their union attorney so they might know what the writ meant. At trial the deputy identified some of those who were in the group at the time.

The deputy's testimony corroborated that of the sheriff. However, he did express the feeling the incident involving one person in the crowd being struck in the face with a policeman's night club had something to do with the crowd getting out of line, whereas the sheriff was of the opinion his arrest of the rock thrower was the igniting cause.

One or more photographers from the Denison newspaper were present and took pictures at the scene. Many in the group were later identified from those photographs as being striking employees from the Dakota City, Fort Dodge, Mason City and LeMars plants.

Twenty-seven of those identified were arrested on contempt citations. They were tried as a group with a hearing commencing November 12. All were represented by an attorney and were afforded opportunity and did take the witness stand to give their version of their part in what occurred at the Denison plant the early morning of November 8. All but three were adjudged to be in contempt of court by reason of their failure to comply with the terms of the temporary injunction and order of the Crawford district court.

Where necessary we will refer to the petitioners for the writ of certiorari as plaintiffs and the respondent court as defendant. Rule 307, Rules of Civil Procedure.

I. "Contempt proceedings are commonly treated as criminal in nature even when they arise in civil actions. While proof of the acts constituting the contempt need not be beyond a reasonable doubt, clear and satisfactory proof is required. * * * [citing authorities] American Security Benevolent Assn. v. District Court, 259 Iowa 983, 988–989, 147 N.W.2d 55, 59. The opinion continues:

" 'We have held in several certiorari actions questioning a judgment of contempt that we will review the evidence for the purpose of determining whether proof of the contempt is clear and satisfactory. The cause is not triable de novo here but the judgment does not have the full force and effect of a jury verdict. While we give weight to the trial court's findings we are not bound by them.' * * [citing authorities]

"It is for this court to say, having due regard for the findings below, whether the contempt has been clearly and satisfactorily shown.

* * *

"The requirement of clear and satisfactory evidence means more than a preponderance but less than proof beyond a reasonable doubt. * * * [citing authorities] When the evidence is such that the mind readily reaches a satisfactory conclusion as to the existence or nonexistence of a fact in dispute, then the evidence is, of necessity, clear and satisfactory. * * * [citing authorities]."

■ As a general rule, a person is bound by injunction although he is not a party to the original injunction suit provided he

has notice or knowledge of the injunction order and is within the class of persons whose conduct the order seeks to restrain, or is within the class of persons in active consort or participation with a person either directly restrained or is within the class of persons that has been restrained by the court order. Harris v. Hutchinson, Judge, 160 Iowa 149, 154, 140 N.W. 830, 832, 44 L.R.A., N.S., 1035; United Packing House Workers of America (C. I. O.) Local 38 v. Boynton, 240 Iowa 212, 222, 35 N.W.2d 881, 888, and authorities cited in these opinions; Annot., 15 A.L.R. 386, 387; 42 Am.Jur.2d, Injunctions, section 320; 43 C.J.S. Injunctions § 263c.

The trial court found each of those cited for contempt to be a member of the class to which the temporary injunction was directed. Plaintiffs do not challenge this finding but assert the trial court erred: (1) in finding there was sufficient competent evidence to support its conclusion those cited for contempt actually knew or must have known of the October 27th injunction and order and of its contents and (2) by not applying the principle announced by this court that mere presence in the vicinity of the disturbance does not constitute clear and satisfactory proof that those so present are in contempt of court by violating the injunction.

They rely on these contentions to sustain the writ and annul the order against them.

■ II. Plaintiffs' first assignment is without merit. This record satisfies us all plaintiffs must have known of the injunction and its contents. The trial court had jurisdiction to adjudge plaintiffs guilty of contempt.

Twelve of those adjudged to be in contempt admitted as witnesses in their own behalf they either had the injunction read to them or had heard about it through some news media. Many had served as regular pickets at the Denison plant between October 27 and November 8. The deputy sheriff read and explained the injunction to a number of pickets while at the scene serving the injunction and order.

All plaintiffs seeking this review were members or members to be of Amalgamated and striking workers employed before striking at plants of Iowa Beef Packers at points other than Denison. Some were officers of their local union. The issuance of the temporary injunction and its limitation as to number of pickets was given extensive coverage by newspapers, radio and television. However, most denied they were familiar with the contents and its meaning. The court's finding is amply sustained.

Carey v. District Court, 226 Iowa 717, 730, 285 N.W. 236, 243 and United Packing House Workers of America (C. I. O.) Local 38 v. Boynton, 240 Iowa at 222–223, 35 N.W.2d at 888, support our conclusion.

■ III. The three paragraphs previously set out from the court's order directing issuance of the injunction may be summarized as prohibiting those named as defendants and all acting in consort with them from: (1) picketing the Iowa Beef Packers plant in Denison with more than six men at any one time at each end of the public highway, (2) obstructing or stopping or interfering with persons about to enter or intending to enter the Denison premises for purposes of work or otherwise, (3) obstructing or stopping or interfering with the use of the public highway leading to and from said plant, (4) entering or going upon the packing plant property, (5) from engaging in mass picketing upon the packing plant property or upon the public highway leading to and from plant property, (6) hindering, delaying, interfering with or in any manner obstructing the operation of trucks, trailers, and/or motor vehicles of the beef packing plant or any other person and (7) in any manner or way obstructing the free flow of traffic through and across the public road adjacent to the Denison plant.

A copy of this order was attached to the writ served.

The trial court in its decree considered each citation separately and found all plaintiffs in this proceeding to be in contempt for violating the provision proscribing mass picketing and imposed fines of $25 to $500.

There is little, if any, conflict in the evidence or disagreement between plaintiffs and defendant as to what happened November 8 at the Dension plant. However, plaintiffs maintain in support of their second assignment there is a lack of clear and satisfactory proof to support the court's finding that they participated in the events of the day other than as spectators or mere observers. They argue proof of mere presence is not sufficient, relying on United Packing House Workers of America (C. I. O.) Local 38 v. Boynton, 240 Iowa at 226, 35 N.W.2d at 890.

The factual circumstances in Boynton are distinguishable. Those involved in the cited case were striking workers at the Decker plant in Mason City where the disturbance took place. Here the employees at the Denison plant were not on strike. Those adjudged to be in contempt had been workers at Iowa Beef Packers' plants at other points before inception of the strike at their respective plants. They left their homes at an early hour, traveled from 80 to 180 miles in order to gather at a nonstriking plant owned and operated by the corporation that owned and operated plants plaintiffs were striking against. Their insistence they came "to observe" is not persuasive.

Photographs properly received in evidence over plaintiffs' objections, Van Horn v. Iowa Public Service Company, 182 N.W. 2d 365, 369–370 (Iowa 1970), furnish strong evidence that those identified in these exhibits were actively connected with some disturbance and were more than observers on the road and roadway leading to the plant. This is not the situation involved in Boynton where this court said, "mere presence in the vicinity, merely 'in that street and on the sidewalks and around the trucks, all over the place' is not clear, convincing and satisfactory proof that they are in contempt of court by violating the injunction."

A group of six striking workers at the Mason City plant made the trip to Denison and are among those seeking review here.

Wilbur H. Neve, president of the Mason City local union, was in this group. By his own testimony, he left Mason City at 11 p. m. November 7 arriving at the Denison plant with the others. He remained there from approximately 4:30 a. m. until daylight. The court's finding that Neve, by his actions, showed a total disregard for the order against mass picketing was based on conduct and participation in the disturbance other than his beer drinking on the highway. He was fined $500.

Arlynn Boelman was also in the party. The court found he came to Denison in defiance of the court order against mass picketing and fined him $100.

Raleigh King, another passenger in the car with Neve, was fined $100.

Russell Hickman, still another in the party with Neve, was fined $100.

Leonard Vrieze lives at Lake Mills, had been employed at the Mason City plant and had been at Denison earlier when the deputy sheriff read the injunction. He was fined $500.

LeRoy Behr, who testified he was shoved by someone and struck on the head by a Denison policeman the morning of November 8, was formerly employed at the Mason City plant. The court fined him $500.

Another group of those adjudged to be in contempt were from the Fort Dodge plant and live in that area.

Edward Kenne is a union steward and member of the local grievance committee. The court found he became a part of the mass of people assembled at the Denison plant and fined him $100.

Thomas Martin left Fort Dodge between 4:30 and 5 a. m. November 8. The court

found he was not a spectator or onlooker or a peaceful picket and fined him $150.

Ross Read was ordered to pay a fine of $100.

Thomas Rowe was ordered to pay a fine of $100.

Robert Ewing was fined $100 since his presence was an overt disobedience of the court's order.

Howard Ewing was directed to pay a fine of $100.

Larry Nelson came to the Denison plant with Mike Ulicki because he wondered what was going on and because it affected his job at Fort Dodge. He was fined $100.

Mike Ulicki was ordered to pay a fine of $100.

Micky Geopfert was fined $100.

Don Breeden of Humboldt was fined $100.

Lupe Hiracheta has been employed at the Fort Dodge plant for six and one-half years. A photograph received as an exhibit pictures this plaintiff at the time Behr was struck by the Denison policeman. The court found this exhibit fully demonstrated his attitude while present at the approach to the Denison plant and ordered him to pay a fine of $300.

Douglas Hoffman, apparently the only striking worker from the LeMars plant involved as a plaintiff here, testified he saw rocks being thrown by persons in the crowd. He was ordered to pay a fine of $100.

Four of the remaining plaintiffs had worked at the Dakota City plant and lived in the Sioux City area.

Harriet Jackson, a member to be of Amalgamated, had been on picket duty at Denison the day before the incident involved occurred. She said her purpose in being at Denison was to get the support of the Denison employees for the strike at Dakota City. She wanted these employees to join Amalgamated. She was fined $25.

Merlyn Tiede, accompanied by Harriet Jackson, came to Denison to volunteer for picket duty. He was fined $50.

Roland Sidie was fined $100.

Glen E. Biggerstaff had been a picket at the Denison plant. The injunction had been read to him. He wanted not only the support of the people at the Denison plant but also wanted them to walk out. He is pictured carrying a ball bat during the disturbance. The court found his action "furnished a stimulus to bring about further mob action and destruction of property and possible injury to persons." It was the court's conclusion his actions showed an obvious intent to violate the injunction against mass picketing. He was fined $500.

We are firmly convinced from our review of the evidence submitted at the contempt hearing that it furnishes the clear and satisfactory proof required under the rule recognized in American Security Benevolent Assn. v. District Court, supra, to sustain the trial court's decree adjudging these 22 plaintiffs violated the injunction forbidding more than 12 pickets, six at each plant entrance, by their active participation in the disturbance.

Provision was made in each instance for imprisonment in default of the fine imposed. The judgments are well within the range established by statute. There does not appear to be an abuse of the discretion resting in the trial court and we are not inclined to reduce them.

The writ is therefore annulled and the decree sustained as to these plaintiffs.

IV. The adjudications of contempt against Myron Reihe and Timothy Bahr remain for consideration.

Reihe had been employed at the Dakota City plant but had been on strike for several weeks. Since the first day of the

strike he had been living temporarily at a Denison motel. He was a picket captain in charge of assigning pickets. The deputy sheriff had read the injunction to him as a named defendant in the injunction proceeding. He denied being aware of any difficulty at the Denison plant until November 8.

Around 5 a. m. that morning Larry Beasley and Timothy Bahr came to the motel and awakened Reihe, told him there was a large number of people gathered at the plant and that they didn't know what was going on. Reihe dressed, went to the plant, saw the trailers burning and came back to the motel to seek the advice of Mr. Peck, the international representative. He said Peck told him they wanted no violence and for Reihe to go back and tell the people to go home.

Reihe, Beasley and Bahr returned to the plant between 5:30 and 6 a. m. Reihe testified he told everyone he saw to go home as they didn't want any trouble, just peaceful picketing. Reihe said he was successful in getting some to leave. He testified he was doing his best to keep peaceful picketing at the plant.

Timothy Bahr also employed at the Dakota City plant had been on strike for several weeks. He had been at the Denison plant for three weeks before November 8 as a regular picket working the morning shift from 6 a. m. until 2 p. m. He was fully aware of the injunction which the deputy sheriff had read to him.

November 8 he went to the Denison plant early for picket duty. When he arrived at the plant, Bahr saw a large number of people gathered. Bahr and Larry Beasley, another regular picket, returned to the motel to awaken Reihe and tell him of the situation. The three returned to the picket line, then back to the motel to awaken Mr. Peck who told them to return and urge the crowd to go home as they wanted no trouble.

Bahr testified he was with Reihe in an automobile when they told a number of people to leave. The crowd started thinning out.

Bahr put on his picket sign and started his regular duty.

The court found Beasley was not in contempt and he was discharged.

On the other hand, the court adjudged Reihe and Bahr in contempt for violating the injunction against mass picketing. Defendant imposed a fine of $100 on Reihe and one of $50 on Bahr.

Our review of the record fails to convince us these two men were actively participating in the disturbance at the Denison plant. We conclude they were making an effort to disperse the crowd and avoid trouble. They should have been discharged.

Therefore, the writ is sustained and the decree of the trial court reversed as to Reihe and Bahr.

For the reasons set forth the writ is sustained in part and annulled in part.

All Justices concur except RAWLINGS, J., who takes no part.