| 83  | 202 |
| 104 | 587 |
| 83  | 202 |
| 107 | 421 |

J. C. MURRAY, Appellee, v. M. M. WALKER, Appellant.

1.  **Partnership:** UNINCORPORATED ASSOCIATION: INDEBTEDNESS: LIABILITY OF MEMBERS: INSTRUCTIONS TO JURY. In an action against the defendant, as a member of an unincorporated fair association, for the amount of certain premiums offered by the association, it appeared that there was no express agreement between those charged as being officers and directors as to the organization or conduct of the association, and the defendant denied that he was an officer or member of said association, but he admitted that he was at the fair, acted as one of the judges at the races, and undertook the collection of money to pay certain bills, but not as a member of the association. The evidence showed, however, that the fair was largely advertised in the daily papers of the city where defendant resided, and gave the defendant's name as vice-president of the association, and that one of such papers was taken by the defendant. *Held*, that in view of the conflict in the evidence it was properly left to the jury to determine whether the defendant ratified the publication of his name as an officer of the association.

2.  ———: ———: ———: ———. The court instructed the jury that if defendant had knowledge of the offer of premiums, and he, as a member of the association, assisted in holding the fair, this would amount to a ratification of such offer, and would render the defendant liable; but that his acts at the fair, if any, as a mere employe would not of themselves, if he was not a member, impose any liability upon him. *Held*, that the instruction was proper.

3.  ———: ———: ———: ———. A rule of the association permitted the officers, in case of unfavorable weather, to reduce or scale down the premiums, and the court had instructed the jury that if the conditions were such that the officers might scale down the premiums the association would only be liable for the reduced amount. There was evidence of an offer on the part of the association to pay less than the full amount of the premiums, and of the acceptance by some of such offer. *Held*, that the court properly instructed the jury that no agreement of the exhibitors to accept a less sum than what was due, without other consideration than the payment of such less sum, would not be binding.

4.  ———: ———: ———: ———. Where the court has instructed the jury upon a question in issue in a cause in a general way, but not as fully as desired by one of the parties, and such party does not ask a modification or change of such instruction, he cannot complain of such instruction upon appeal, although the court refused at the request of such party to give other instructions upon the same point.

5. ——: ——: ——: EVIDENCE. An irresponsive answer by a witness may be stricken out on motion of the party by whom the witness was called.

6. ——: ——: ——: ——. Where it is sought to subject one of the officers of an unincorporated association to liability for the indebtedness of such association, *held,* that it might be shown in proof of such person being an officer of the association that others who were advertised as officers of said association, as was the defendant, acted in such official capacity in fact.

7. ——: ——: ——: ASSIGNMENT. Where the signature to an assignment of an account by a partnership was disputed, *held,* that one who had corresponded with the firm, and knew its signature only as it had been communicated to him in that way, might testify that the signature to such correspondence was the same as that affixed to the assignment.

*Appeal from Jackson District Court.* — HON. C. M. WATERMAN, Judge.

TUESDAY, JUNE 2, 1891.

ACTION to recover premiums offered by the "Upper Mississippi Valley Inter-state Fair." The defendants in the suit as originally instituted are twenty-eight in number, being the president, vice-president, treasurer, secretary and directors of the fair. The petition represents that the defendants, as partners, associated together for the purpose of conducting a fair or exposition at Dubuque in September, 1884, and advertised for exhibitors of horses, cattle and other live stock, and articles of machinery, etc., to be present and compete for premiums offered by the association; that in pursuance thereof persons did appear and compete for said premiums; and that a large amount of the premiums thus competed for by various persons are due and unpaid, and that the plaintiff is now by assignment the owner thereof. The petition asks for judgment against each of the defendants. The answer presents defenses which will be noticed in the opinion so far as necessary. A separate trial was awarded the defendant Walker,

and the issues were submitted to a jury, that returned a verdict for the plaintiff, and from a judgment thereon the defendant appeals.—*Affirmed.*

*Fouke & Lyon* and *Robt. W. Stewart,* for appellant.

*L. A. Ellis, Graham & Cady* and *C. W. Farr,* for appellee.

GRANGER, J.—The case involves a consideration to some extent of the rules of law applicable to members of voluntary associations (unincorporated) for debts incurred. The defendant Walker was the alleged vice-president of the association. One E. R. Shankland was its secretary, and generally conducted the business of advertising and other preparations for the fair. The fair was prominently advertised in two of the leading daily papers of the city of Dubuque, and one of them was taken at the store of the defendant, and also at his residence, in which was a column of advertisement in large display type, with the names of the officers and directors of the fair, the defendant being designated as vice-president. The defendant's answer is a denial of his being a member or officer of the association, and his testimony is a denial of his having any business relation therewith. The assignments in the case bring in question the correctness of some of the instructions given and refused, and also rulings upon the admission of evidence. We may be somewhat aided in our consideration to have in view some unquestioned rules of law announced by the district court in the case, wherein the facts essential to a recovery are stated. The correctness of the fifth instruction given by the court is not questioned in argument, and stands, for the purposes of the case, as announcing correct rules, and we may add that they are justified by authority.

The instruction is as follows: "5. Parties to unincorporated associations are not holden to contracts

made in their names by others without authority. The authority, however, may be given in any of the ways known to the law of agency, or the act may become binding by ratification. Mere membership, or the fact, if shown, that the defendant performed some duties at said fair, would not create liability. But such facts may be considered with others as tending to show liability. In this case, if you find that defendant Walker was a member, and held an office, in said fair association, or if you find that he performed some duties at said exhibition, neither of these facts would create liability on his part to plaintiff, but it will be necessary for you to further find that he offered the premiums promised, or authorized some person to make said offer, or that he ratified the act of such other person in making such offer by adopting such act as his own after it was done. But in order to amount to a ratification it must be shown that defendant not only knew of the fact that the offer of said premiums was made by some third person, but it must further appear that said offer purported to be made in part on behalf of defendant as a member of said association, and that, knowing this fact also, he adopted and approved said act.''

I. The fourth instruction, after stating some undisputed facts, as that there was a so-called "Upper Mississippi Inter-state Fair Association" in name; that a fair was held, premiums offered, etc., states some disputed questions, as: "Was defendant Walker a member of the association? Did he, as such member, take part in said fair, and offer, either by himself or agent, to pay the premiums offered, or, knowing of said offer, did he as a member of said association ratify the same?" The objection to the instruction is that it submits to the jury the question: "Was defendant Walker a member of said associa-

1. PARTNERSHIP: unincorporated association: indebtedness: liability of members: instructions to jury.

tion?" and it is urged that the correct query was: "Did defendant Walker ratify the act of Shankland in advertising him as an officer or holding him out as an officer of a pretended organization?" The question is to be settled by the issues on which the plaintiff seeks to recover. Looking to the petition, we find it alleged that the defendants "were partners, doing business *. * * under the firm-name and style of Upper Mississippi Valley Inter-state Fair, and * * * held themselves out to the ·world as such." The liability of the defendant depended upon his being a partner in such association. If a partner, he was a member thereof. The pleadings put the alleged facts in issue, and the testimony was conflicting. Hence, the inquiry was not improper, but essentially necessary.

It is said in this connection that the "legal effect of the evidence offered is" that Walker did not so ratify the act of Shankland in advertising or holding him out as an officer, and that the appellant for that reason was entitled to a dismissal of the case. This involves an inquiry as to the legal effect of the evidence bearing on the question of the defendant's liability; that is, is it such that the court should, as a matter of law, have determined the defendant not liable? It may be said from the record that there was no express agreement between the defendants as to the organization or conduct of the association; that the understanding must have been mainly through interviews with Shankland in regard to the fair; the public nature of the enterprise, the publicity given thereto through advertisements, and the public announcement as to who were the promoters thereof. Mr. Walker does not say he did not see the advertisements in the papers of Dubuque including his name as vice-president of the fair, but he does say he does not recollect it; that he probably saw the advertisement, but gave it no attention; and has no recollection that he saw his

name as an officer.   He states that he was present afterwards at the fair, and, at the instance of the superintendent of the department, acted as one of the judges at the races; that at the instance of Mr. Shankland he acted to collect some money to pay certain bills, but that nothing that he did was in consequence of his being a member of the association or connected therewith.   We are then to inquire if there is anything in the record to so dispute this as to make the question of liability one of fact for the jury.   It is a fact that from April to September the object and purpose of the fair were prominently in the public prints in the city of Dubuque, where the defendant resided, and was engaged in business; that it was a matter of general public interest; that such fairs, for success, demand the co-operation of many persons; that the business men of such a city would naturally be interested to know who were the promoters of an enterprise of so public a nature, as its success would largely depend thereon; that the management of such fairs is generally under the direction of officers of the classes named, and not by a single person, as would be the fact in this case under the claim of the appellant; that the defendant actually knew of the fair, and contributed twenty-five dollars thereto, and that his name, through the public advertisements, was before the public as an officer of the association.   Viewing these facts without reference to the statements of the defendant, and we think no jury or person uninterested would long hesitate to say that the defendant both knew and tacitly at least assented to such use of his name.   If so, such facts, viewed with the statements of the defendant, constitute a conflict that makes the question one of fact for the jury.   The consideration of this point at this time will materially aid in the disposition of other questions to be considered.

II.   The court's sixth instruction is as follows:

"6.   If you find that defendant was a member of said fair association, and had knowledge of the fact that said association had offered the premiums in question, and he thereafter, as such member, assisted in the holding of said fair, this would amount to a ratification on the part of defendant, and would make him liable in this action.   But his acts at said fair, if any, as a mere employe, if he was such, would not of themselves impose any liability upon him if he was not a member of such association."

It is said that "participation in holding the fair would not amount to ratification;" that he must have participated with full knowledge of the liability he was incurring thereby.   The liability is the legal inference from the facts stated in the instruction.   It is the law applicable to the facts, and that the defendant was bound to know.   It is further urged that the instruction is faulty, misleading, in that it speaks of the acts of the defendant at the fair as an "employe."   There is no evidence of his being an employe in the sense of "working for hire," but the term "employ" has a different meaning at times,—as, "to use," "to occupy," "to intrust;" and under the evidence there could not well have been any misunderstanding by the jury as to what was meant by the term "employe."

III.   Complaint is made of the eighth instruction by the court, which is as follows:   "8.   If the whole amount of the premiums offered was earned by plaintiff or his assignors, and became due and owing from defendant, then no agreement, if any is shown, on the part of any of said exhibitors with the defendant or his assignors, to accept a less sum than what was so due, without other consideration for such agreement than the payment of such less sum, would be binding upon such exhibitor, and he or his assignors might, notwithstanding the acceptance of said sum, recover the balance still due."

There was a rule of the association that permitted the officers, in case of unfavorable weather, to reduce or "scale down" the premiums, and the court had instructed the jury that the obligation of the association for the payment of the premiums was in the nature of a contract; and, in effect, that the acceptance by the exhibitors must be in the light of all the terms of the offer; and that, if the conditions were such that the officers might scale down the premiums, the association would only be liable for the reduced amount. An objection to the instruction is that it assumes there was evidence tending to prove that some of the exhibitors agreed to take less than the full amount due. That there is evidence showing that there was an offer to pay less than the full premiums offered, and an acceptance by some, will not be questioned; the point of difference being that one party regards the amount due as the remainder of twenty-five per cent. after scaling down, and the other party the full amount offered. The court submitted to the jury the question whether the conditions existed to warrant scaling down the premiums, and it was in view of this situation on the trial that the court gave the eighth instruction to guard against the effect of any agreements to take a part of what was due in satisfaction of the whole, if it found the conditions such that the scaling was not justified; and the instruction, we think, properly expresses the law, and was warranted by the state of the evidence.

IV. There is a complaint that the court did not instruct the jury as to the legal effect of the rule permitting the scaling down of the premiums because of unfavorable weather, the thought being, as we understand, that the jury should have been told what kind of weather would be "unfavorable," so as to warrant scaling down. The

court instructed the jury briefly and in a general way on this branch of the case, and, to the extent of the instruction, correctly. The defendant asked other instructions, but did not ask a modification or change of the instruction in the particular as to which complaint is now made, and we think he should not now complain.

V. Numerous questions are presented as to the admission and rejection of evidence. Bart E. Linehan was a witness for the plaintiff, and stated on his direct examination that he "never accepted the trust of treasurer." The answer, on motion of the plaintiff, was stricken out as not responsive, and the appellant complains and says the ruling led the "jury to understand that he had accepted an office in an alleged association." But the plaintiff was entitled to a responsive answer to the question, and was not required to allow an irresponsive answer to remain, even if material (which we do not decide).

5. —: —: —; evidence.

VI. The court permitted witnesses to testify—as in the case of Mr. Linehan—that he acted as treasurer, and to what he did in that capacity as to payments of accounts, etc., and that one Crotty acted as clerk for him. It is urged that the acts of Mr. Linehan could in no way affect the defendant. Among the facts that the plaintiff must establish to recover is this: That these defendants were associated and acting together in the conduct of the fair. A way of doing this is by proving the acts of each in furtherance of the objects of the association, and the manner of their doing it; as, did the officers assume the duties that naturally belonged to the stations they were advertised as holding? If yes, was it publicly done, in view of the exhibitors, and in a way that others might reasonably understand they were really such officers? The testimony complained of was admissible for such a purpose.

6. —: —: —; —.

VII.  S. S. Brown's Sons were exhibitors at the fair, and were awarded a premium of two hundred and sixty dollars, on which there is an unpaid balance of two hundred and ten dollars. which constitutes a part of the plaintiff's claim, as assignee thereof.  S. S. Brown is dead, and his sons were engaged in business under the above name.  Lucy Brown is executrix of the estate of S. S. Brown, and is at times spoken of in the testimony as "executrix of the estate of S. S. Brown's Sons," and also as a member of the firm.  The firm's signature to the assignment was written by Lucy Brown, and its genuineness as that of the firm is questioned.  Disregarding the evidence as to her being the executrix and a member of the firm, and the action of the court in admitting the signature or assignment in evidence is fully sustained. · Mr. Farr testified that he had corresponded with the firm, and the signature in his correspondence is the same as that to the assignment; that he has transacted business for the firm, and knows the signature, as it has been communicated to him several times, and that the signature to the assignment "is the genuine signature for the copartnership of the firm, by which they do business with the world."  It is true, he says he never saw the signature written, and that he knows it only through his business transactions and correspondence.  The evidence clearly shows that Lucy Brown was authorized to attach the signature, and, further, that the firm recognized and acted upon the signature in its business relations.  1 Greenleaf on Evidence, sec. 577.

It is not important that we consider the objections to the evidence further.  The rulings are in the main correct, and in no case is there error to the prejudice of the defendant.  The judgment is AFFIRMED.

7. ——: ——: ——: assignment.