WILSON & CO., Inc., a Delaware Corporation, Plaintiff,

v.

UNITED PACKINGHOUSE WORKERS OF AMERICA, a labor organization affiliated with the A.F.L.-C.I.O.

and

Local Union No. 3 of United Packinghouse Workers of America, a labor organization affiliated with the A.F.L.-C.I.O.

and

John W. Wolfe, individually and as President of said Local Union No. 3 and as a member and representative of the class and membership of said Local Union No. 3; et al., Defendants.

Civ. No. 664.

United States District Court
N. D. Iowa,
Cedar Rapids Division.

Feb. 29, 1960.

V. Craven Shuttleworth, Charles A. Hastings, Ralph W. Gearhart, and Wayne C. Collins (of Elliott, Shuttleworth & Ingersoll), Cedar Rapids, Iowa, for plaintiff.

Robert F. Wilson, Cedar Rapids, Iowa, and Richard F. Watt (of Cotton, Fruchtman & Watt), Chicago, Illinois, for defendants.

GRAVEN, District Judge.

The complaint of the plaintiff, which was filed herein on June 12, 1959, is in

two counts. In Count I the plaintiff seeks to recover damages in the amount of $150,000 from the defendants United Packinghouse Workers of America and Local Union No. 3 of the United Packinghouse Workers of America. The latter defendant will be referred to as Local Union No. 3. In Count II the plaintiff seeks to recover damages in the amount of $150,000 from the defendants to that count, who are designated as officers, agents, or stewards of Local Union No. 3. Liability is asserted against those defendants individually and as agents and representatives of Local Union No. 3. There were approximately one hundred and seventy persons named as defendants to Count II, of whom approximately sixty were personally served with summons. Local Union No. 3 is also listed among the defendants to Count II. It would seem that it is so listed for the purpose of identifying the class represented by the other defendants.

The plaintiff is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is in Chicago, Illinois. It is duly authorized to do business in the State of Iowa. It operates packing plants at a number of places in the United States including a plant at Cedar Rapids, Iowa, in this District. It is engaged in an industry affecting commerce. The defendants to Count I are unincorporated labor unions. The individual defendants to Count II are citizens and residents of the State of Iowa.

The plaintiff alleges that on November 30, 1956, it and the defendant unions entered into a written collective bargaining agreement which was still in effect at the time it filed its complaint herein. The plaintiff further alleges that the two unions were labor organizations representing the employees in an industry affecting commerce. It is the claim of the plaintiff that the said unions breached paragraph 126 of that agreement. That paragraph provides, in part:

"126. Should grievances arise between the Company and the Union or between the Company and the employees pertaining to matters involved in this agreement or incident to the employment relationship, there shall be no strike, stoppage, slowdown or suspension of work on the part of the Union or its members or a lockout on the part of the Company on account of such grievance * * *."

In paragraphs 8 and 9 of Count I the plaintiff makes the following allegations in connection with its claim against the unions:

"8. That commencing on or about June 10, 1959, and to and including the present time the said Defendants herein, acting individually and as a member and representative of the class and membership of said Local Union and U.P.W.A., and in concert with the respective officers and agents of said unions, have violated and breached the said Agreement, Exhibit 'A' attached hereto, and in particular Section 11 thereof by causing, directing, influencing, assisting and persuading its members, employees of this Plaintiff, employed at its plant and place of business at Cedar Rapids, Linn County, Iowa, to refuse to work more than eight hours in any one day independent of the directions of the Plaintiff herein, its officers and representatives and the reasonable need therefor, and Plaintiff further alleges that said acts and conduct will continue in the future. Plaintiff further alleges that such acts and conduct and such conspiracy is being employed by said U.P.W.A. and its Local Unions representing employees of this Plaintiff at its plants located in Omaha, Nebraska, and Albert Lea, Minnesota.

"9. The said Defendant Unions, each of them knowingly and willfully, disregarded the terms and conditions of the said Agreement and their duties thereunder, through the acts of their officers and agents, by advising, persuading, directing and/or permitting such strikes,

work stoppages and slowdowns by causing and aiding the members of Defendants' Local Union to participate in such strikes, work stoppages and slowdowns."

In paragraphs 6 and 7 of Count II the plaintiff makes the following allegations as to the defendants to that count:

"6. That the said individual defendants herein acting in their individual capacities and as employees of Plaintiff and in their respective capacities as officers and representatives of said Local Union and as a member and representative of the class and membership of said Local Union, acting in concert and with the intent to hinder and prevent Plaintiff from carrying on its business at its Cedar Rapids, Iowa, plant in the usual and customary manner in which it had been conducted and carried on under the terms and conditions of said collective contract, Exhibit 'A', knowingly and willfully disregarded the terms and conditions of said Agreement and their duties thereunder, and acting as individuals and as officers and agents of said Local Union and said U.P.W.A. refused and caused other employees of plaintiff at its Cedar Rapids, Iowa, plant to refuse to work more than eight (8) hours in any one day, notwithstanding the needs and requirements of said plant for such work in the usual and ordinary course of its business and the terms and provisions of said collective agreement and particularly the provisions of paragraph 11 thereof.

"7. That the Plaintiff requested its employees at its Cedar Rapids, Iowa, plant and the officers and representatives of said Local Union and U.P.W.A. to cease such prohibited acts, but said Defendants herein, acting individually and as officers and representatives and in concert and in a wrongful conspiracy, refused so to do and encouraged, conspired and confederated to cause other employees of Plaintiff at its Cedar Rapids, Iowa, plant to likewise refuse so to do."

In paragraph 11 of Count I the plaintiff makes the following allegations:

"11. As a direct result of the foregoing illegal acts and conduct of the Defendants in violation of the terms of said Agreement, the Plaintiff's meat packing operations have been willfully interfered with whereby the Plaintiff has suffered, and will continue to suffer, great damage and injury due to the loss of production, sale and profit which it would have otherwise made, and has lost the goodwill of customers to whom it was unable to furnish product, and has otherwise been damaged all to its damage in the amount of One Hundred Fifty Thousand Dollars ($150,000.00)."

In paragraph 8 of Count II the plaintiff makes identical allegations concerning damages.

Jurisdiction as to Count I is based upon Section 185, Title 29 U.S.C.A., which is a part of the Labor Management Relations Act of 1947. The section referred to appeared as Section 301 of that Act. Because the courts more frequently refer to the section in question as Section 301, it will be so referred to herein. That section provides as follows:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

"(b) Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its

agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

"(c) For the purposes of actions and proceedings by or against labor organizations in the district courts of the United States, district courts shall be deemed to have jurisdiction of a labor organization (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members.

"(d) The service of summons, subpena, or other legal process of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.

"(e) For the purposes of this section, in determining whether any person is acting as an 'agent' of another person so as to make such other person responsible for his acts, the question of whether the specific acts performed were actually authorized or subsequently ratified shall not be controlling."

Count I sounds in contract. The plaintiff in Count I sets forth a violation of a collective bargaining agreement cognizable under Section 301(a). That count meets the jurisdictional and venue requirements of Section 301.

Jurisdiction as to Count II is based upon diversity of citizenship. In Count II the plaintiff sets forth a claim which sounds in tort. The tort claimed is that of inducing the defendant unions which were parties to the collective bargaining agreement to breach that agreement. Count II is not based upon any federal statute. In that count the plaintiff proceeds against the defendants under the common law of Iowa relating to the tort referred to and to unincorporated associations. The defendants to that count have, by a motion to dismiss, challenged the right of the plaintiff to so proceed. In this case there is presented the questions whether an employer who is a party to a collective bargaining agreement with a union may, in addition to proceeding against the union under Section 301 for a claimed breach of that agreement, also maintain an action against the union's officers, agents and stewards individually and as a class for inducing the alleged breach. These questions involve the scope and effect of Section 301.

Consideration of the scope and effect of Section 301 has to start with the noted case of Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972. In that case a union sought to compel an employer to comply with the arbitration provisions of a collective bargaining agreement. The District Court ordered the employer to comply with the requirement. The Court of Appeals reversed. 5 Cir., 230 F.2d 81. The United States Supreme Court reversed the Court of Appeals. In the majority opinion, it is stated (at pages 450–451, of 353 U.S., at page 914 of 77 S.Ct.):

"There has been considerable litigation involving § 301 and courts have construed it differently. There is one view that § 301(a) merely gives federal district courts jurisdiction in controversies that involve labor organizations in industries affecting commerce, without regard to diversity of citizenship or the amount in controversy.[1] Under that view § 301(a) would not be the source of substantive law; * * *. Other courts * * * hold that § 301(a) is more than jurisdictional[2] —that it authorizes federal courts to fashion a body of federal law for the enforcement of these collective

bargaining agreements and includes within that federal law specific performance of promises to arbitrate grievances under collective bargaining agreements. * * * That is our construction of § 301(a), * *."

In the majority opinion it is further stated (at page 456 of 353 U.S., at page 918 of 77 S.Ct.):

"The question then is, what is the substantive law to be applied in suits under § 301(a)? We conclude that the substantive law to apply in suits under § 301(a) is federal law, which the courts must fashion from the policy of our national labor laws. * * * "

The importance of the decision gave rise to much law review consideration. Among the many law review writings discussing that decision are: Bickel and Wellington, Legislative Purpose and The Judicial Process: The Lincoln Mills Case, 71 Harvard Law Review 1 (1957); Pirsig, The Minnesota Uniform Arbitration Act and the Lincoln Mills Case, 42 Minnesota Law Review 333 (1958); Comment, 43 Iowa Law Review 660 (1958); Comment, 42 Minnesota Law Review 1163 (1958). In the Harvard Law Review article, supra, the authors, in discussing the scope and effect of the Lincoln Mills case, state (p. 22):

"What section 301 really demands of the federal courts, therefore, is not the application but the creation in case after case, with the scant assistance of bits and pieces of statutory commands, of a law of labor contracts the chief source of which is to be the common law of commercial contracts. * * * "

In the same article (p. 23 footnote) the authors point out that "At common law, the courts always have had difficulty with the collective-bargaining agreement." In the Iowa Law Review Comment, supra, it is stated (p. 661): "Although section 301 does not expressly enact any code, or indeed a single provision of substantive law, it was read as a man-

date to the courts to formulate a federal common law.[7] "

Since it has been authoritatively determined that Section 301 is substantive in character as to cases within its scope, whether a case within its scope is brought in a state or federal court is not of significance.

The defendants to Count II assert that the effect of Section 301 is to deny the plaintiff the right to proceed against them on the claim set forth in that count. That assertion necessitates a consideration of several phases of the law.

Count II has two aspects. The plaintiff declares against the defendants as representatives of the class of membership of the local union. It also declares against them as individuals. Rule 23(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides as follows:

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

Since subparagraph (1) is not applicable in the present case, it is apparent that only subparagraphs (2) and (3) could be pertinent. Rule 42 of the Iowa Rules of Civil Procedure, 58 I.C.A., is to the same effect.

██ Rule 17(b) of the Federal Rules of Civil Procedure provides, in part:

"(b) Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, * * *."

It is clear that under Rule 17(b), in an action where a substantive federal right as distinguished from a right arising under local state law is involved, the capacity of an unincorporated association to sue or be sued will be governed by federal law; but where no federal right is involved the capacity of such an association to sue or be sued is governed by local law. Oskoian v. Canuel, 1 Cir., 1959, 264 F.2d 591, 593. The parties are in controversy as to whether federal substantive law, i. e., Section 301, bears upon Count II. It would seem that some light might be shed on that question by ascertaining what the situation would be under the Iowa law apart from that situation.

The local union is an unincorporated association. The United States Supreme Court in Hecht v. Malley, 1924, 265 U.S. 144, 44 S.Ct. 462, 68 L.Ed. 949, in regard to the definition of the word "association" in its ordinary meaning, stated (at page 157 of 265 U.S., at page 467 of 44 S.Ct.):

"It has been defined as a term 'used throughout the United States to signify a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise.' 1 Abb. Law Dict. 101 (1879); 1 Bouv.Law Dict. (Rawle's 3d Rev.) 269; 3 Am. & Eng.Enc.Law (2d ed.) 162; and Allen v. Stevens, App.Div., 54 N.Y.S. 8, 23, in which this definition was cited with approval as being in accord with the common understanding. Other definitions are: 'In the United States, as distinguished from a corporation, a body of persons organized, for the prosecution of some purpose, without a charter, but having the general form and mode of procedure of a corporation.' Webst.New Internat.Dict. '[U. S.] An organized but unchartered body analogous to but distinguished from a corporation.' Pract.Stand.Dict. And see Malley v. Bowditch, C.C.A., 259 Fed. 809, 812; Chicago Title Co. v. Smietanka, (D.C.), 275 Fed. 60: also United Mine Workers v. Coronado Co., 259 U.S. 344, 392, in which unincorporated labor unions were held to be 'associations' within the meaning of the Anti-Trust Law."

██ Under the Iowa law where members contract in the name of an unincorporated association, they and all of the members who authorize, approve, consent, and ratify the contract are personally liable for the obligations of such contract. Lewis v. Tilton, 1884, 64 Iowa 220, 19 N.W. 911; Reding v. Anderson, 1887, 72 Iowa 498, 34 N.W. 300; Murray v. Walker, 1891, 83 Iowa 202, 48 N.W. 1075; Comfort v. Graham, 1893, 87 Iowa 295, 54 N.W. 242; Lamm v. Stoen, 1939, 226 Iowa 622, 284 N.W. 465, 121 A.L.R. 627. See also Haldeman v. Addison, 1936, 221 Iowa 218, 265 N.W. 358; Keller & Bennett v. Tracy, 1861, 11 Iowa 530. In the case of Lamm v. Stoen, supra, the Court stated (at page 467 of 284 N.W.): "The personal liability of representatives and members of a voluntary unincorporated association appears to be based upon principles of agency. * * *." The personal liability of the members of an unincorporated

816

association also includes tort liability. Johnson v. Miller, 1883, 63 Iowa 529, 17 N.W. 34, 50 Am.Rep. 758. The case just cited was the first appeal in the famous Jones County Calf case. Later appeals in that case appear at 1886, 69 Iowa 562, 29 N.W. 743; 1891, 82 Iowa 693, 47 N.W. 903, 48 N.W. 1081; 1894, 93 Iowa 165, 61 N.W. 422. The Iowa Supreme Court held in a number of cases that an unincorporated association is not an entity, and may not sue or be sued in its association name only. Presbyterian Church of Osceola v. Harken, 1916, 177 Iowa 195, 158 N.W. 692; Hanley v. Elm Grove Mut. Telephone Co., 1911, 150 Iowa 198, 129 N.W. 807. However, the Iowa Court even long prior to Rule 42 of the Iowa Rules of Civil Procedure recognized the availability of a class suit in connection with actions involving unincorporated associations. In the case of Keller & Bennett v. Tracy, 1861, 11 Iowa 530, 531, it stated that if the individual members of the association were so numerous as to make it impracticable to bring them all before the court that one or more of the members could be sued as representatives of the others. In the case of Lamm v. Stoen, 1939, 226 Iowa 622, 284 N.W. 465, 467, 121 A.L.R. 627, the court stated that one who enters a contract with an unincorporated association as a legal entity may be estopped to deny the validity of the contract on the ground that the association did not have a legal existence. In the case of Nissen v. International Brotherhood, etc., 1941, 229 Iowa 1028, 295 N.W. 858, 141 A.L.R. 598, the Court reviewed the Iowa cases on the subject and held that one seeking a writ of mandamus and the recovery of money damages because of the claimed wrongful conduct of an unincorporated labor union could proceed by means of a class action.

The case of United Packing House Workers of America v. Boynton, 1949, 240 Iowa 212, 35 N.W.2d 881, involved an injunction issued in a labor dispute. The action was styled as being against the local, certain named persons individually and as officers of the local, and all other members of the local. Notice of the suit was served upon three of the named persons, following which an injunction was issued. A large number of members of the local were cited for contempt for violation of the injunction, were found guilty, and were sentenced. On appeal it was contended in behalf of those members that the injunction was void. The Iowa Supreme Court held that the action was a proper class action under Rule 42 of the Iowa Rules of Civil Procedure. The Iowa Court stated (at page 885 of 35 N.W.2d):

"The record clearly shows that the members of Local 38 are so numerous that it is impractical to bring them all before the court. The right involved is several, as to the various members; the question involved is a common question of law and the relief asked was common to all. While no where in the petition or notices is it categorically stated that the action is of a representative or class nature, local 38; its officers, both individually and officially; and all other members of the local whose names are unknown to the plaintiff, are named as defendants. Service was made upon the named defendants, as officials of the organization, Local 38, as well as individuals. The organization being an unincorporated association, no purpose or reason appears for such inclusion of the officers, in their official capacity, except as they represent the group or organization. Under Rule 46, R.C.P., the trial court found the parties before it (the officials of Local 38) adequately represented the group. No member of the class appeared and in accordance with Rule 47, R.C.P., an attorney was appointed to represent it. In this finding we find no error. It was clearly a class action."

From the Iowa decisions it seems that a plaintiff who wishes to have rights adjudicated or personal liability enforced in transactions involving an unincorporated association may proceed by a representative class action against the

members as a whole, by an action against certain of the members individually, or by both means. The cases of Murray v. Walker, 1891, 83 Iowa 202, 48 N.W. 1075, and Haldeman v. Addison, 1936, 221 Iowa 218, 265 N.W. 358, are illustrative of cases in which a personal money judgment was sought against members individually. Where the plaintiff proceeds by a representative class action, the members of the association are treated as a whole and the unincorporated association is in effect treated as a legal entity. Lamm v. Stoen, supra. In the case of Nissen v. International Brotherhood, etc., supra, the plaintiffs made use of a representative class action in a suit involving an unincorporated labor union. Among other relief, they asked for a money judgment. A money judgment was entered in their favor, but the trial court provided that the judgment should be paid out of funds of the union then in the possession of the defendant officers and their successors, or which might thereafter come into their possession, which in effect gave the union an entity status.

Under the Iowa law Local Union No. 3, having contracted as an entity, would undoubtedly be treated as an entity in connection with the contract in question. Further, under the Iowa law, insofar as Count II would constitute a representative class action against the members of that local, any money judgment recovered therein would doubtless be ordered paid out of the funds of that local.

A substantial portion of the briefs and arguments is directed to the question as to the effect, if any, of Section 301 upon the claim asserted by the plaintiff in Count II. A consideration of that question requires the giving of attention to some other phases of the law.

 The National Labor Relations Act, 29 U.S.C.A. § 151 et seq., does not exclude a tort action under state common law against a union. United Construction Workers v. Laburnum Const. Corp., 1954, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025. An action may be maintained under state common law against a union for breach of contract even though the breach also constitutes an unfair labor practice under the National Labor Relations Act. International Association of Machinists v. Gonzales, 1958, 356 U.S. 617, 78 S.Ct. 923, 2 L.Ed.2d 1018. An action may be maintained against a union under state common law to recover damages for malicious interference with a contract of employment even though the wrongful conduct constituted a violation of the National Labor Relations Act. International Union, United Automobile, etc., Workers of America v. Russell, 1958, 356 U.S. 634, 78 S.Ct. 932, 2 L.Ed.2d 1030. In that case the interference was by force and intimidation. In the case of San Diego Building Trades Council v. Garmon, 1959, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775, a state court award of damages in favor of an employer and against a union for peaceful picketing which had as its objective the acceptance by the employer of a proposed agreement was set aside. It was stated in the majority opinion (at page 246 of 359 U.S., at page 780 of 79 S.Ct.) that the activity for which damages were awarded was arguably a protected activity under the National Labor Relations Act. In the same opinion it was stated (at page 247 of 359 U.S., at page 781 of 79 S.Ct.) that the cases in which state court awards of damages against unions had been sustained by the Court were for the consequences of acts which were wrongful under the traditional law of torts. In the same opinion (at page 247 of 359 U.S., at page 781 of 79 S.Ct.) it was stated that an award of damages against a union by a state court was a form of preventive relief and that such form of relief might impinge upon the regulative provisions of the National Labor Relations Act which were potentially involved. It is apparent that there are many troublesome and unanswered questions in connection with the determination of whether a particular labor matter is within or without the scope of state action or court relief in view of the Na-

tional Labor Relations Act. In substance, the defendants claim in this connection that to allow the plaintiff to recover damages under Iowa common law for inducing the breach of the contract in question would impinge upon the provisions of Section 301.

If injunctive relief were asked of this Court in connection with Count II, the provisions of the Norris-LaGuardia Act, Section 101, Title 29 U.S.C.A., could well present an obstacle. See Local 205, etc. v. General Electric Company, 1 Cir., 1956, 233 F.2d 85, 90. However, the plaintiff does not ask that the defendants be enjoined from continuing to induce a breach of the contract. It seeks only to recover damages because of such inducement. The claim of the plaintiff in Count II is cast in the form of a traditional tort action.

The fact that the claim of the plaintiff in Count II is asserted in a federal court is not of significance in the present case. It has heretofore been noted that the provisions of Section 301 constitute substantive federal law. Such being the situation, if the claim asserted by the plaintiff in Count II does impinge upon the provisions of that section, the result would be the same whether that claim was asserted in state court or in federal court.

Section 301 authorizes an action for damages against a union for breach of contract. Under that section an action may be maintained against a union for damages for breach of a no-strike provision in a collective bargaining agreement to which it was a party. E. g., United Electrical, Radio & Machine Workers v. Oliver Corp., 8 Cir., 1953, 205 F.2d 376; Shirley-Herman Company, Inc. v. International Hod Carriers, etc., 2 Cir., 1950, 182 F.2d 806, 17 A.L.R.2d 609. See Bagley, Suits Against Labor Organizations Under Section 301 Of The Labor Management Relations Act, 9 Washington and Lee Law Review 29 (1952).

Section 301 purports to be applicable only to actions for breach of contract and not to tort actions. In the case of Coleman v. Pokodner, 1957, 6 Misc.2d 955, 163 N.Y.S.2d 161, the plaintiffs sought to recover damages against certain union defendants individually and against the president of a union in his representative capacity for alleged assaults. In their claim against the president of the union the plaintiffs relied, in part, upon Section 301. In passing upon a motion in that case the Court stated (at page 164 of 163 N.Y.S.2d):

"It was apparent upon the argument of this motion that the plaintiffs were under the misapprehension that the Taft-Hartley Act, supra, created a cause of action against the defendant association as a legal entity and that a determination in such action would be binding on such entity. Such contention is untenable. A study of the section referred to clearly indicates that it is applicable only in actions for breach of contract and not in tort. Haspel v. Bonnaz, etc., Local 66, D.C., 112 F.Supp. 944, affirmed 2 Cir., 216 F.2d 192. Furthermore, the Taft-Hartley Act, supra, is not applicable to common law tort actions in the state courts (Schatte v. International Alliance of Theatrical Employees, etc., 9 Cir., 182 F.2d 158)."

The decisions of the United States Supreme Court heretofore cited hold that actions which involve traditional forms of tort claims having their origin in labor disputes are not necessarily or in general inhibited by the provisions of the National Labor Relations Act, and that they would be inhibited only if they conflicted with the provisions, objectives, and purposes of that Act. It is the contention of the defendants to Count II that the maintenance of the action which is the subject matter of that count does so conflict. That contention requires a consideration of the nature and elements of the action which the plaintiff seeks to maintain in Count II.

It was heretofore noted that the claim of the plaintiff in Count II sounds in tort, the claimed tort being the inducing of a breach of the collective bargaining

agreement between the plaintiff and the unions. That interference with contract relations could constitute a tort was first definitely recognized in the well-known case of Lumley v. Gye (1853), 2 El. & Bl. 216, 118 Eng.Rep. 749, 1 Eng.Rul. Cas. 707. The development and various aspects of the rule pronounced in that case are fully and well covered in Prosser, Torts (2d Ed. 1955). The author cites many cases and a large number of law review writings on the subject. The subject has been extensively annotated. See annotation to Sorenson v. Chevrolet Motor Company, 1927, 171 Minn. 260, 214 N.W. 754, 84 A.L.R. 35, and Dukes v. Brotherhood of Painters, etc., 1950, 191 Tenn. 495, 235 S.W.2d 7, 26 A.L.R.2d 1223.

In Restatement, Torts, Section 766 (1939), it is stated:

"General Principle.

"Except as stated in Section 698, one who, without a privilege to do so, induces or otherwise purposely causes a third person not to

"(a) perform a contract with another, or

"(b) * * *

is liable to the other for the harm caused thereby."

Section 698 referred to relates to pre-marital relations.

 The Iowa Supreme Court has long recognized that a wrongful interference with contractual relations is actionable. In the case of Kock v. Burgess, 1914, 167 Iowa 727, 149 N.W. 858, the plaintiff alleged in his petition that the defendant had unlawfully and wrongfully interfered with a contract which the plaintiff had entered into with another person relating to a tract of real estate and that because of such interference prevented the completion of that contract. The trial court sustained a demurrer to the petition. On appeal the trial court was reversed. The Court stated (at page 860 of 149 N.W.):

"As to wrongful interference with contracts of personal employment, the rule is well settled that if dam-

ages result the wrongdoer is liable, and the injured person is not bound to his remedy for a breach of the contract. Hollenbeck v. Ristine, 114 Iowa, 358, 86 N.W. 377; Faunce v. Searles, 122 Minn. 343, 142 N.W. 816. As to interference with contracts, not of employment, but based upon personal obligations, the rule which commends itself to us is:

" 'That when a party has entered into a contract with another to do or not to do a particular act or acts, he has as clear a right to its performance as he has to his property, either real or personal, and that knowingly to induce the other party to violate it is as distinct a wrong as it is to injure or destroy his property. It is not a sufficient answer to say that he had a remedy against the party who has broken the contract.' Raymond v. Yarrington, 96 Tex. 443, 72 S.W. 580, 73 S.W. 800, 62 L.R.A. 962, 97 Am.St.Rep. 914."

See also Shannon v. Gaar, 1942, 233 Iowa 38, 6 N.W.2d 304, and Wissmath Packing Co. v. Mississippi River Power Co., 1917, 179 Iowa 1309, 162 N.W. 846, L.R.A.1917F, 790. A party to a contract who has rights thereunder which have been wrongfully interfered with by another is not bound to his remedy for breach of contract against the other party to the contract. Kock v. Burgess, 1914, 167 Iowa 727, 149 N.W. 858, 860. It is not a defense to one who wrongfully induces a breach of contract that the plaintiff has a cause of action against the other party to the contract for its breach. Hornstein v. Podwitz, 1930, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1. Thus the fact that the plaintiff has a cause of action against the two unions which are parties to the contract in question would not be of avail to the defendants to Count II.

 In Counts I and II the plaintiff alleges that the acts complained of were done pursuant to a conspiracy. Technically speaking, there is no civil action for conspiracy. Charles Rubenstein, Inc. v. Columbia Pictures Corp.,

D.C.1957, 154 F.Supp. 216, 219; Miller v. Ortman, Ind.App.1955, 124 N.E.2d 390, 403; Trebelhorn v. Bartlett, 1951, 154 Neb. 113, 47 N.W.2d 374, 378; Bender v. Candee, Smith & Howland Company, Sup.1954, 136 N.Y.S.2d 425, 426; Martin v. Ebert, 1944, 245 Wis. 341, 13 N.W.2d 907, 152 A.L.R. 1142. Conspiracy is not a tort. Nikora v. Mayer, D.C.1954, 122 F.Supp. 587, 588; Sheppard v. Coopers' Incorporated, 1956, 13 Misc.2d 862, 156 N.Y.S.2d 391. Allegations that the tortious acts complained of were committed pursuant to a conspiracy neither add to nor detract from a complaint in a civil action. Riley v. Dun & Bradstreet, Inc., 6 Cir., 1952, 195 F.2d 812, 813; A. S. Rampell, Inc. v. Hyster Co., 1955, 1 Misc.2d 788, 148 N.Y.S.2d 102, 107. It is not the conspiracy, but the wrongful acts causing damage which are civilly actionable. Moffett v. Commerce Trust Co., D.C.1949, 87 F. Supp. 438, 442; Roche v. Blair, 1943, 305 Mich. 608, 9 N.W.2d 861; Virtue v. Creamery Package Mfg. Co., 1913, 123 Minn. 17, 142 N.W. 930, 939, 1136, L.R.A.1915B, 1179. The gist of the action is the injury, not the combination. Brictson v. Woodrough, 8 Cir., 1947, 164 F.2d 107, 109. However, the plaintiff may use the conspiracy theory of evidence in an action for breach of contract even though conspiracy is not the gravamen of the complaint. International Longshoremen's, etc. Union v. Juneau Spruce Corp., 9 Cir., 1951, 189 F.2d 177, 190. A conspiracy cannot be the subject of a civil action unless something is done pursuant to it which, without the conspiracy, would give rise to a right of action. Shannon v. Gaar, 1942, 233 Iowa 38, 6 N.W.2d 304; Community Sav. Bank v. Gaughen, 1940, 228 Iowa 18, 289 N.W. 727. See also Stambaugh v. Haffa, 1934, 217 Iowa 1161, 253 N.W. 137; Boom v. Boom, 1928, 206 Iowa 70, 220 N.W. 17; Faust v. Parker, 1927, 204 Iowa 297, 213 N.W. 794; Jahr v. Steffen, 1919, 187 Iowa 168, 174 N.W. 109; Aughey v. Windrem, 1908, 137 Iowa 315, 114 N.W. 1047. In the case of Shannon v. Gaar, 1942, 233 Iowa 38, 6 N.W.2d 304, the plaintiff alleged that the defendants conspired to cause a breach of contract. The Court stated (at page 307 of 6 N.W.2d):

" * * * we may observe that a combination between two or more persons to cause a breach of contract is generally recognized as an unlawful conspiracy. The right to the benefits of a contract is a property right which cannot be destroyed without entitling the injured party to damages. * * *.

"Where, however, the parties are not liable severally for causing the breach of a contract, they are not liable jointly by reason of the allegation of conspiracy. * * *."

However, all persons who unite to induce a breach of contract are jointly and severally liable for the damage to the person injured thereby. Hornstein v. Podwitz, 1930, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1. In the present case the allegation of conspiracy in each count amounts to a charge that the defendants thereto acted jointly and in combination to cause the damages for which recovery is sought. If such allegation is established as to either count, the legal result would be that each of the defendants to such count would be jointly liable for the entire amount of damages proved. In an action against a union for breach of contract under Section 301, all who act in concert in causing the breach are liable for the entire injury resulting therefrom. International Longshoremen's, etc. Union v. Juneau Spruce Corp., supra, at page 190 of 189 F.2d. The Iowa rule is the same in an action for the inducement of a breach of contract. Shannon v. Gaar, supra.

The question of damages under the two counts will next be considered. In each count the plaintiff seeks to recover $150,000, the amount of actual damages claimed to have been sustained by it because of the breach of the no-strike clause. It was heretofore noted that Count I sounds in contract and Count II sounds in tort. In an action against a union under Section 301 for damages caused by a breach of a no-

strike provision in a contract, the measure of damages recoverable is the actual loss sustained by the plaintiff as a direct result of the breach. United Electrical, etc. Workers of America v. Oliver Corp., 8 Cir., 1953, 205 F.2d 376, 388. Such loss would be that which may reasonably and fairly be considered as arising naturally from the particular breach of contract involved and which may reasonably be supposed to have been in the contemplation of the parties at the time the agreement was entered into in the event of such violation. See United Electrical, etc. Workers of America v. Oliver Corp., supra, at page 388 of 205 F.2d.

In a comment entitled, Damages Recoverable In An Action For Inducing Breach of Contract, 30 Columbia Law Review 232 (1930), it is stated (p. 232) (footnote numbers omitted):

"There are three measures of damages available to a court in an action for wrongfully inducing a breach of contract. Some courts have indicated that a contract measure of damages should be used, that is to say that the plaintiff may recover the same amount of damages as if the action were being brought against the party who had been induced to breach the contract. Many courts have stated that the defendant in an action for wrongfully inducing a breach of contract is liable for all the damage caused, to the same extent as a person who has been guilty of an intentional invasion of another's rights in more tangible property. Other courts, assuming an intermediate position, have stated that the defendant is subject to the same rules of damages as those ordinarily applicable in actions for the negligent invasion of another's rights in tangible property.

"The importance of selecting one of these three possible measures of damages is shown by its effect on the answer to the following questions: How far will the defendant be held liable for the consequential damages which are the result of his wrongful act? Can the plaintiff recover damages for mental suffering caused by defendant's tort? Should exemplary or punitive damages be awarded in this action? If the plaintiff is unable to prove that he has suffered any actual damage, will he be able to recover nominal damages? To what extent is the plaintiff placed under a duty or disability to mitigate or avoid the damaging consequences of the defendant's act?"

In the same comment it is further stated (p. 236):

"The above discussion reveals the following differences among the three measures of damages as applied to a defendant's liability for consequential damages: Under the contract measure, a defendant's liability is limited to the contemplated damage; under the negligent measure, it is limited to the proximate damages; under the intentional measure, his liability is extended to include all the damages towards which his tort was a contributing cause. And it seems that some courts have limited the amount of plaintiff's recovery to the 'contemplated damages,' other courts have allowed the plaintiff to recover all the 'proximate damages,' and some courts apparently have allowed the plaintiff to recover even further consequential damages which were neither 'contemplated' nor 'proximate.' "

In the comment it is further stated (p. 233) that the courts which follow the contract measure of damages are applying the rule of Hadley v. Baxendale, 9 Exch. 341, 156 Eng.Reprint 145, 5 Eng. Rul.Cas. 502. The Minnesota Supreme Court follows Hadley v. Baxendale. Despatch Oven Company v. Rauenhorst, 1949, 229 Minn. 436, 40 N.W.2d 73, 79. The Minnesota Supreme Court follows the contract measure of damages in actions for inducement of breach of contract. Swaney v. Crawley, 1916, 133

Minn. 57, 60, 157 N.W. 910. See also Western Oil & Fuel Company v. Kemp, 8 Cir., 1957, 245 F.2d 633, 643. The Iowa Supreme Court also follows Hadley v. Baxendale. See Mentzer v. Western Union Tel. Co., 1895, 93 Iowa 752, 62 N.W. 1, 28 L.R.A. 72. While the Iowa Supreme Court has not expressly ruled on the measure of damages for inducement of breach of contract, it would appear likely that it would follow the contract measure of damages.

Under the allegations of the plaintiff in its complaint herein, the measure of damages under Counts I and II are the same. The plaintiff asks the same actual damages in both counts. Thus, the question whether the plaintiff might recover damages under Count II different from and beyond those sought in Count I is not presented.

None of the rules of law so far considered would inhibit the plaintiff from maintaining an action against the defendants to Count II for inducement of breach of contract under the common law of Iowa. However, there is still to be considered another phase of the law relating to inducement of breach of contract.

Where a person who is a party to a contract breaches it, there is some logical difficulty in holding him liable in tort for having induced such breach. Regarding inducement of breach of contract the Restatement, Torts, Section 766 (1939), heretofore set out, declares that the wrong is that of inducing a third person not to perform a contract with another. In the case of Hope Basket Company v. Product Advancement Corp., 6 Cir., 1951, 187 F.2d 1008, the Court states (at page 1014) that the rule of Lumley v. Gye, supra, relates to one who is not a party to the contract. Somewhat closely related to the situation just discussed is the situation where a party to a contract is a corporation or other legal entity which can act only by its officers and agents, and therefore any breach on its part would necessarily be caused by them. In 26 A.L.R.2d 1270 it is stated:

"It is ordinarily held that the officers, directors, or employees of a corporation are not liable for its breach of contract on the theory that they induced such breach."

It has been held that a servant who, while acting within the scope of his authority, procures or causes a breach of contract between his employer and a third person is not liable in tort to such third person for causing such breach. Said v. Butt [1920] 3 K.B. (Eng.), 497, 11 B.R.C. 317.

In the case of Hicks v. Haight, 1939, 171 Misc. 151, 11 N.Y.S.2d 912, the plaintiff alleged that his contract of employment with a corporation had been wrongfully terminated. In two counts of his petition he asked for damages from the corporation for breach of contract. In two other counts he asked for damages against the directors and officers of the corporation for inducing the breach. The Court dismissed the latter counts. The plaintiff as to such counts relied upon the doctrine of Lumley v. Gye, supra. The Court stated (at page 917 of 11 N.Y.S.2d):

"If the plaintiff is right in his contention, it seems to follow that whenever either a managing director or a board of directors, or a manager or other official of a company, causes or procures a breach by that company of its contract with a third person, each director or official will be liable to an action for damages, upon the principle of Lumley v. Gye * * * as for a tortious act. So, too, with the manager or other agent of a private firm, who does the like thing. * * *."

The Court stated that such exclusion of the doctrine would leave the directors of a corporation open to tort claims every time a corporation breached its contract.

In the case of Braden v. Perkins, 1940, 174 Misc. 885, 22 N.Y.S.2d 144, the Court stated (at page 145):

"It is well settled that a director or officer of a corporation may not be

held liable where his corporation has been allegedly induced by him to violate its contractual obligation. Greyhound Corporation v. Commercial Casualty Ins. Co., 259 App.Div. 317, 19 N.Y.S.2d 239. It would seem that the same principle applies with equal force to a member of a partnership. The argument that the conspiracy counts change the moving party's position is not persuasive. * * *."

In the case of Nathanson v. Brown & Williamson Tobacco Corp., 1947, 189 Misc. 1024, 68 N.Y.S.2d 914, the Court stated (at page 919):

"Plaintiff pleads therein a conspiracy by employees of the defendant corporation to bring about certain corporate action, namely, the breach of plaintiff's agreement with the defendant corporation. Since a corporation can act only by its employees and since whatever they do in relation to corporate business is corporate and not individual action, the conspiracy charge fails. * * *."

If the situation in the present case were reversed and the defendant unions were seeking recovery of their damages from the plaintiff corporation for a claimed breach of the contract in question and from its officers for having induced such breach, it seems clear that recovery could not be had from such officers for such inducement.

The question is then presented as to whether under either Section 301 or the common law, or both, the officers of the union who are the defendants to Count II may be proceeded against indirectly for inducing a breach of the contract in question.

It was heretofore noted, in connection with the consideration of the law relating to unincorporated associations, that all of the members of the association who approve or ratify a contract entered into in the name of the association become parties to such contract. In the case of McLean Distributing Co. v. Brewery & Beverage Drivers, etc., 1959, 254

Minn. 204, 94 N.W.2d 514, certiorari denied, 1959, 360 U.S. 917, 79 S.Ct. 1436, 3 L.Ed.2d 1534, the Court stated (at page 525 of 94 N.W.2d):

"In dealing with a contract between an employer and a union, acting as an exclusive bargining (sic) agent for all employees of such employer, it is necessary to have in mind the nature of such agreement. To begin with, the union acts as the agent for the employees presently employed, and they are as much bound by the contract executed in their behalf by the union as if they had executed it themselves. * * *."

It would seem, therefore, that the defendants to Count II would in one sense be considered as being parties to the contract in question rather than as being third parties to it. However, the plaintiff is not proceeding against those defendants for breach of the contract but for inducing the breach thereof.

The last question to be considered is what effect, if any, the provisions of Section 301 may have upon the action for inducement of breach of contract set forth in Count II.

In the case of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, reference is made to some of the legislative history relating to Section 301. When that particular provision was under consideration by Congress, Senator Taft stated (at page 449 of 348 U.S., at page 495 of 75 S.Ct.) that the section provides that unions can be sued as if they were corporations, and if a judgment is found against a labor organization the liability is on the union and "not on the individual members of the union, where it has fallen in some famous cases to the great financial distress of the individual members of labor unions."

In the case of International Ladies' Garment Workers' Union v. Jay-Ann Company, 5 Cir., 1956, 228 F.2d 632, 634, the Court stated that Section 301 makes unions suable as corporations. Section 301(b) provides, in part:

"Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets."

In an action under Section 301 it is proper to include the portion above set out in the instructions to the jury. United Electrical, etc. Workers of America v. Oliver Corp., 8 Cir., 1953, 205 F.2d 376, 387. The recent case of Lewis v. Benedict Coal Corporation, 1960, 80 S. Ct. 489, involved a claim of an employer for damages for breach of a no-strike clause in a collective bargaining agreement. In the majority opinion it is stated (at page 495 of 80 S.Ct.) :

"Section 301(b) of the Taft-Hartley Act provides that 'any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.' At the least this evidences a congressional intention that the union as an entity, like a corporation, should in the absence of agreement be the sole source of recovery for injury inflicted by it. * * *."

In Count I of the complaint the plaintiff utilizes the provisions of Section 301 to maintain an action at law for damages for breach of contract against Local Union No. 3 as a legal entity analogous to a corporation. In Count II it in legal effect disregards the entity theory and proceeds against the defendants to that Count under equity class action procedure and the common law of Iowa relating to inducement of breach of contract.

■ It was heretofore noted that the officers of the plaintiff corporation would not be subject to liability for inducing a breach of the contract in question. It would seem that since the plaintiff is proceeding against Local Union No. 3 as a legal entity under the provisions of Section 301, its officers should be treated similarly. Further, the legislative history of Section 301 and the pronouncements of the United States Supreme Court lend support to the view that where a union as an entity is subject to liability for the damages occasioned by a breach of its collective bargaining agreement under Section 301, its officers should not be held to be individually liable for the inducement of such breach.

It should be specifically noted that the only tortious conduct charged as to the defendants to Count II is that as officers of Local Union No. 3 they induced the breach of the contract which is the subject matter of Count I. They are not charged with tortious conduct involving force, violence, fraud, or intimidation. Cases in which one or more of those features were present would not seem to be in point. The same would be true of cases in which the question here presented was not raised. It would seem that to allow the plaintiff to proceed against the defendants to Count II as attempted would impinge upon the provisions of Section 301.

It is the holding of the Court that the motion of the defendants to dismiss Count II should be sustained, and it is so ordered.